**Joseph D. McMAHON P–7814, Appellant,**

v.

**Thomas FULCOMER, Superintendent. (D.C. Civil No. 85–176E)**

No. 86–3494.

United States Court of Appeals, Third Circuit.

Argued May 11, 1987.

Decided June 8, 1987.

George E. Schumacher, Federal Public Defender, Frank Arcuri, Asst. Federal Public Defender, Joel B. Johnston (argued), Pittsburgh, Pa., for appellant.

Richard A. Hernan, Jr., Dist. Atty., Jurij Trypupenko (argued), Asst. Dist. Atty., Warren, Pa., for appellee.

Before GIBBONS, Chief Judge, and MANSMANN, Circuit Judge and KATZ, District Judge.*

## OPINION OF THE COURT

GIBBONS, Chief Judge:

Joseph D. McMahon appeals from the denial of his petition for a writ of federal

---

* Hon. Marvin Katz, United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

habeas corpus by the United States District Court for the Western District of Pennsylvania. McMahon sought relief from a state criminal conviction claiming that his sixth amendment right to assistance of counsel had been unconstitutionally infringed. The district court held that the appellant had presented a "mixed" petition, containing both exhausted and unexhausted claims for relief, and thus denied his petition in accordance with *Rose v. Lundy*, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982). We find that McMahon's petition for habeas corpus relief was not mixed. Moreover, because we find that McMahon did not knowingly and intelligently waive his right to counsel, we will reverse the district court's order denying the petition, and we will direct that the district court grant the writ.

### I.

On May 12, 1981, petitioner was arrested, along with his brother, by Pennsylvania State Police Trooper John Heary, in connection with the burglary of the home of Mr. and Mrs. Paul Laughenberger in Warren County, Pennsylvania. On May 14, 1981, petitioner applied for appointment of counsel, and on May 15, 1981, the Court of Common Pleas of Warren County referred his application to the Public Defender's Office. On May 22, however, this application was revoked after petitioner's family retained private counsel, Phillip Jacobus, Esq. By July 14, 1981, petitioner was represented by another privately retained lawyer, William J. Kubiak, Esq., who was also representing petitioner's brother.

Attorney Kubiak represented the petitioner throughout the pre-trial proceedings of this case, including preliminary hearings, arraignment, a suppression hearing, and jury selection. On January 4, 1982, however, the day of petitioner's jury selection, Attorney Kubiak filed two motions on petitioner's behalf, one requesting a continuance, the other advising the court of petitioner's desire that Attorney Kubiak withdraw his appearance as petitioner's counsel.[1] The trial judge instructed Attorney Kubiak to advise the defendant that he viewed the motion as a delay tactic, and would not grant the continuance. So informed, petitioner still elected to discharge retained counsel.[2] The court entered an order granting defense counsel's motion to withdraw, denying petitioner's motion for a continuance, and appointing Mr. Jon Marti, Esq., Assistant Public Defender, to represent the defendant on a stand-by basis.

The record reflects that on January 6, 1982, the following colloquy occurred between petitioner, the district attorney, and the trial judge:

> THE COURT: Let the record show that on this date the defendant, Joseph

---

1. According to the motion papers, petitioner maintained that Kubiak's representation was "ineffective, inadequate, and further that [Kubiak] was uncooperative and failed to take steps which the defendant, but not [Kubiak] felt necessary to adequately defend [the defendant]." Application to Withdraw Appearance, *Commonwealth v. McMahon*, Crim. No. 155, 156 (Pa.Ct. of Common Pleas Jan. 4, 1982). Specifically, McMahon complained of counsel's reluctance to adopt defendant's contention that Trooper Heary had engaged in a cover up of material facts as to an illegal search and seizure, and had given conflicting testimony on the subject.

2. After granting Attorney Kubiak's motion to withdraw, the trial court apparently offered the Public Defender's services to the defendant. Appellant claims, in his Petition for Writ of Habeas Corpus, that these services were declined for the following reasons:

> [T]here was a conflict of interest with petitioner and public defender at this time since petitioner had pending a petition for post con-

viction relief in an unrelated case ... charging public defender with ineffective assistance in that case and under existing state law ... public defender member from same office may not represent petitioner as trial court tried to enforce and for those lawful reasons petitioner believed conflict of interest existed to decline public defender. And that they were representing co-defendant.

Petition for Writ of Habeas Corpus at 6, *McMahon v. Fulcomer*, No. 85–176 Erie (W.D.Pa. June 22, 1985) (*reprinted in* Joint Appendix at 130) [hereinafter Petition for Writ of Habeas Corpus]. There is nothing in the record to either substantiate or contradict these reasons offered by the appellant, other than a brief reference in the trial transcript of petitioner's belief that his brother "does not have an attorney." Trial Record at 93, *Commonwealth v. McMahon*, Crim. No. 155, 156 (Pa.Ct. of Common Pleas, Jan. 6, 1982) [hereinafter Record].

D. McMahon is present in the judge's chambers and the district attorney is present.

(To defendant): Mr. McMahon, the reason I have brought you here is to explain this procedure to you outside the hearing of the jury. Your jury was selected on January 4 and thereafter you discharged your counsel, Mr. William Kubiak, and I am going to try your case without counsel. I have appointed Mr. Jon Marti, the assistant public defender, on a stand-by basis and you can consult with him concerning the law if you so desire.

Now my duty as the judge is to advise you of the procedure. I have no duty to advise you of the law or to advise you on any decisions you should make. Mr. Marti will advise you on the law.

Now the procedure is the Commonwealth will proceed first with its case, present all the evidence it has to indicate your guilt. After that you have a right to present your defense. You have a right to present your defense. You have a right to testify in your own behalf and you have a right to present your witnesses. You need not testify unless you freely elect to do so. You have a right to remain silent and not testify. If you do testify you will be subjected to cross examination as will your witnesses.

You have a right to object to any evidence as the case proceeds if you think objection is proper. The Court of course will rule on it just as if you were represented by counsel. Otherwise the entire procedure will be just as if you were represented by counsel. In effect what you have done is discharge your counsel and the Commonwealth is prepared and has a right to proceed at this time in the case.

Do you have any questions, Mr. McMahon, about this procedure?

THE DEFENDANT: No, your Honor.

DISTRICT ATTORNEY: May it please the Court, I have two things, your Honor. I have made a notation to request the Court, since the termination of the services of his counsel, Mr. Kubiak, by the defendant, I felt it might be appropriate for a brief colloquy on that point so

Mr. McMahon discloses on the record what had transpired between he and his former counsel, Mr. Kubiak. Secondly, I think Mr. McMahon should be advised he still has a right to plead guilty at this time rather than go to trial, if he so desires.

THE COURT: No, I really don't think that is necessary. I will ask you this, Mr. McMahon, I was advised by Mr. Kubiak that you in fact discharged him in this case.

THE DEFENDANT: Yes, sir, I did, prior to the time he says. I discharged him prior to the date he said I did.

THE COURT: Do you want to continue with your jury trial?

THE DEFENDANT: Yes, I do, your Honor.

THE COURT: Very well.

Record at 1–3.

Thereafter, the case proceeded to trial. Petitioner cross-examined several of the government's witnesses, but did not give an opening statement or present witnesses on behalf of the defense. On that same date, January 6, 1982, after forty minutes of deliberation, the jury returned a verdict of guilty as to all counts. On January 29, 1982, judgment of sentence was imposed and petitioner was sentenced to the custody of the Attorney General of Pennsylvania for a minimum period of seven years to a maximum period of fourteen years as to all counts.

No timely notice of direct appeal was filed either by petitioner himself or on petitioner's behalf. However, on February 15, petitioner filed a *pro se* petition for transcripts, averring that the requested transcripts "are for the purpose of effecting an appeal." On February 17, the petition was granted.

On March 8, 1982, petitioner filed a *pro se* petition pursuant to the Pennsylvania Post Conviction Hearing Act ("PCHA"), a petition that was amended by motion to claim, as grounds for relief, that "petitioner was forced to go on trial without counsel, by the court." Motion to Amend Post Conviction Hearing Act Petition at 1, *Com-*

monwealth v. McMahon, Crim. No. 155, 156 (Pa.Ct. of Common Pleas 1982). On April 23, 1982, an Order was entered requiring the Commonwealth to show cause why relief should not be granted. On August 19, 1982, the PCHA court granted petitioner leave to file post-trial motions nunc pro tunc, and on September 9, 1982, petitioner filed a Motion for New Trial, a Motion for Arrest of Judgment, a Motion for Reconsideration of Sentence and a Motion for Disqualification of Trial Judge. By Order dated November 15, 1982, the court denied all motions.

Thereafter, petitioner took a timely appeal to the Superior Court of Pennsylvania, setting forth eight grounds for relief: (1) that his arrest was illegal; (2) that evidence was unlawfully seized from petitioner and his vehicle at the time of his arrest; (3) that the trial judge had improperly deemed the defendant to have waived his right to trial counsel without first conducting an on the record colloquy; [3] (4) that the Commonwealth had been improperly granted an extension of time in which to bring petitioner to trial, for purposes of Pennsylvania's speedy trial rule, Pa.R.Crim.P. 1100; (5) that the jury should have been instructed that it could not find petitioner guilty both of burglary and of receiving stolen property for conduct confined to a single criminal episode; (6) that the Commonwealth knowingly utilized perjured testimony to secure petitioner's conviction; (7) that the Commonwealth obstructed petitioner's right of appeal; and (8) that the court erred in denying petitioner's motion for recusal. The Superior Court affirmed the conviction of the lower court as to all issues except that relief was granted on the sentencing issue, and the case was remanded to the Court of Common Pleas for resentencing.

Finally, petitioner sought an allowance to appeal from the Supreme Court of Pennsylvania, in which he once again raised the claim that he was denied the right of counsel.[4] Review was denied by the Court on July 10, 1985.

On July 5, 1985, petitioner filed the present habeas corpus petition in the Western District of Pennsylvania. As grounds, petitioner claimed he had been denied his "sixth amendment right of counsel of own choice without on-record or sufficient waiver voluntary, knowing and intelligent to right of counsel." Petition for Writ of Habeas Corpus at 5. Petitioner described the facts supporting his claim, which included the reasons for his dismissal of retained counsel, and the trial court's refusal to grant a continuance so he could obtain new counsel. The petitioner concluded by noting:

Without conducting any sufficient on-record waiver nor there being any voluntary knowing or intelligent waiver of right to counsel, the state trial court forced petitioner to exercise self-representation rights and although appointing stand-by counsel, Jon Marti, assistant public defender, but stand-by counsel did not remain in the courtroom during the trial proceeding and was physically absent and one time petitioner had to seek legal advise he had to send word verbally. As a result of the entire facts and

3. This point was argued extensively in Petitioner's Brief to the Superior Court, prepared by the Public Defender's Office, in which petitioner claimed that his "constitutional" right to be represented by counsel had been violated, and that a trial judge must ascertain from the defendant, "on the record, whether there is a knowing, intelligent, and voluntary waiver of counsel." Brief for Appellee [Sic] at 21, Commonwealth v. McMahon, 01372 Pittsburgh 1982 (Pa.Super.Ct. Feb. 25, 1983).

4. Petitioner complained in a letter accompanying the petition:
   While I was in chambers, We had a discussion, (OFF THE RECORD) that the reason why [the trial judge] couldn't appoint me a lawyer was because the Public Defenders Office was Representing my Co-defendant. The Judge did however state on the record that he was taken me on trial without a law[yer], and the District Attorney requested a on the record colloquy as to why I fired my lawyer, Judge did [not] feel it was necessary to do so, I again attempt to question the courts denial for a lawyer but was told by the judge not to say nothing, he'd ask the questions and I'd answer them. Since that time, I went on trial without a lawyer, I Did in fact file a application for a lawyer, none was granted.
   Letter from Petitioner to Pennsylvania Supreme Court Accompanying PCHA Petition Appeal, at 1 (no date).

circumstances this petitioner was prejudiced at trial because he did not know how to meaningfully exercise self-representation and it caused his conviction and there was no valid waiver of the right to counsel guaranteed by the U.S. Constitution and federal habeas corpus relief is warranted now.

*Id.* at 6.

The Commonwealth filed an answer in response to the habeas petition. By breaking the petition into eight separate arguments, the Commonwealth contended that several of the points raised in the present petition had never been argued to either the Superior Court or the Supreme Court of Pennsylvania.[5] Thus, following *Rose v. Lundy,* 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982), the Commonwealth argued that the petition should be dismissed as "mixed"—raising both exhausted and unexhausted claims.

Petitioner filed a response to the district attorney's answer on November 15, 1985, stating that he was not raising, nor had he ever raised, the issue of ineffective assistance of standby counsel. Rather, he noted:

[T]he petitioner wishes to make clear that [the] allegation[s] I have raised in my habeas corpus petition, I have exhausted my remedies and in order for the court to get the full acknowledgment of the case, the petitioner explained the events leading up to his allegations and the Commonwealth has taken it and twisted it all around.

Petitioner's response to the Commonwealth's Answer to Petitioner's Writ of Habeas Corpus at 2, *McMahon v. Fulcomer,* CA 85–176 Erie (W.D.Pa.1985).

Notwithstanding the petitioner's clarification, the Magistrate's Report and Recommendation, filed on June 30, 1986, adopted the district attorney's reading of the petition. Stating that the petition could be read in two ways—either presenting one exhausted claim of denial of counsel, or two claims, one exhausted (denial of counsel) and one unexhausted (ineffective assistance of stand-by counsel)—the Magistrate opted for the latter, and recommended the petition be dismissed without prejudice. Report and Recommendation at 15, *McMahon v. Fulcomer,* CA 85–176 Erie (W.D.Pa. June 30, 1986) [hereinafter Report and Recommendation].

Petitioner filed objections to the Magistrate's Report on July 9, 1986. He once again confirmed his earlier contention that he had intended to raise only one, exhausted claim of denial of counsel. Moreover, Mr. McMahon stated:

Petitioner would like to further make clear to this Court that he is and has not in addition to the above claim, raise (sic) an issue that the standby counsel appointed to assist the petitioner during trial was ineffective because he had been absent at times when the petitioner had sought his advise (sic) and that if this Court is under the impression that this issue was meant to be a claim pertaining to standby counsel, it was not so meant

---

**5.** The Commonwealth read the petition to raise the following eight claims for relief: (1) The petitioner was denied counsel of his own choice; (2) the petitioner did not have sufficient waiver of counsel; (3) Attorney William J. Kubiak provided the petitioner ineffective assistance because he refused to raise the issue of alleged perjury of police officers; (4) Attorney Jon Marti, Assistant Public Defender, was not effective in that he "would not properly raise" the issue of perjury; (5) The petitioner was denied a reasonable continuance to get new counsel after firing his counsel after jury selection and immediately prior to the date of trial; (6) There was a conflict of interest in assigning Jon Marti as stand-by counsel because of a prior PCHA action filed in 1973 by the petitioner and because the Public Defender's Office was representing the co-defendant; (7) The petitioner's stand-by counsel was physically absent from the court room; the petitioner did not know how to meaningfully exercise self-representation "and it caused his conviction;" (8) The petitioner alleges that there was a deterioration of the client-lawyer relationship between himself and Attorney Kubiak. Answer to Petitioner's Writ of Habeas Corpus at 4–5, *McMahon v. Fulcomer,* CA 85–176 Erie (W.D.Pa. Nov. 5, 1985).

The Commonwealth argues that the petitioner had not raised claim 4 (failure of trial counsel to raise perjury issue), claim 6 (conflict of interest), claim 7 (ineffective stand-by counsel), and claim 8 (deterioration of client-lawyer relationship) in any of the state court proceedings. *Id.* at 6–7.

by this Petitioner, nor was it meant to be a basis for relief.

Objections to Magistrate's Report and Recommendation at 3, *McMahon v. Fulcomer*, CA 85–176 Erie (W.D.Pa. July 14, 1986) [hereinafter Objections].

On August 8, 1986, the District Court for the Western District of Pennsylvania entered an order in which it noted that petitioner had filed objections to the Magistrate's Report, and stated that it had reviewed the documents *de novo*. Nevertheless, the Magistrate's Report was adopted, and the petition dismissed. *McMahon v. Fulcomer*, No. 85–176 Erie (W.D.Pa. August 8, 1986).

## II.

### A.

Under 28 U.S.C. § 2254(b) and (c) (1982),[6] a habeas petitioner is required to exhaust available state remedies before requesting habeas relief in federal court. These exhaustion requirements have been interpreted to mean that before a defendant may raise an issue as grounds for federal habeas relief he must present it to the highest court of the state. *See Irvin v. Dowd*, 359 U.S. 394, 406, 79 S.Ct. 825, 832, 3 L.Ed.2d 900 (1959); *Gonce v. Redman*, 780 F.2d 333, 335 (3d Cir.1985).

A petitioner for a writ of habeas corpus has the burden of showing that the claims presented in his federal petition have been "fairly presented" to the state courts, *Picard v. Connor*, 404 U.S. 270, 275, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971), and that the claims presented to the state court are "the substantial equivalent" of those asserted in his federal habeas corpus petition. *Id.* at 278, 92 S.Ct. at 513. In *Picard*, the Court noted that "[w]e do not imply that respondent could have raised the [constitu-

tional] claim only by citing 'book and verse on the federal constitution'.... We simply hold that the substance of a federal habeas claim must first be presented to the state courts." *Id. See also Bissacia v. Attorney General of State of New Jersey*, 623 F.2d 307, 310 (3d Cir.), *cert. denied*, 449 U.S. 1042, 101 S.Ct. 622, 66 L.Ed.2d 504 (1980).

Moreover, under the Supreme Court decision in *Rose v. Lundy, supra*, a federal court may not consider the merits of a habeas petition containing both exhausted and unexhausted claims. In *Lundy*, the Supreme Court held that when faced with a mixed petition, a federal court must dismiss the entire petition, "leaving the prisoner with the choice of returning to state court to exhaust his claims or of amending or resubmitting the habeas petition to present only exhausted claims to the district court." *Id.*, 455 U.S. at 510, 102 S.Ct. at 1199. One month later, in *Engle v. Isaac*, 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982), however, the Court noted that federal courts should be "reluctant to interpolate an unexhausted claim not directly presented by the petition." *Id.* at 124 n. 25, 102 S.Ct. at 1570 n. 25. The *Engle* Court warned against a "creative appellate judge ... distill[ing] from [a 'confused petition'] an unexhausted ... claim." *Cosby v. Jones*, 682 F.2d 1373, 1377 (11th Cir.1982) (Quoting *Engle v. Isaac*, 456 U.S. at 124 n. 25, 102 S.Ct. at 1569 n. 25 (1982)).

### B.

As the Magistrate noted in his Report and Recommendation, were the court to read the instant petition as raising only one claim—that the trial judge improperly required the petitioner to act as his own counsel—no exhaustion issue would be presented, and the district court should

---

**6.** These subsections provide:

(b) An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner.

(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedures, the question presented.

consider the merits of the petition. This is, of course, true since, as noted in section I, *supra*, petitioner raised the substantial equivalent of his sixth amendment claim in his amended PCHA petition, his appeal to the Superior Court, and his petition to the Pennsylvania Supreme Court. The fact that the appellate courts did not directly address the issue of waiver in dismissing the petitioner's PCHA claims is not relevant to this inquiry; the claim need only be *presented* to the state courts to be exhausted for purposes of federal habeas corpus review. *Bissacia v. Attorney General of State of New Jersey*, 623 F.2d at 310. Discussion of a claim in an appellate court opinion is not necessary for exhaustion. *Swanger v. Zimmerman*, 750 F.2d 291, 295 (3d Cir.1984).

Moreover, this court reads appellant's petition as raising this one, exhausted claim. Any ambiguity regarding whether appellant's petition raised more than one claim should certainly have been put to rest in petitioner's Response to the Commonwealth's Answer and in his Objections to the Magistrate's Report. As petitioner clearly and unequivocally stated in both documents, his intention was to raise one claim of unconstitutional denial of counsel. Those additional facts to which the Commonwealth point as evidence of unexhausted claims were simply intended to serve an illustration of petitioner's one sixth amendment claim. As petitioner wrote in his Objections to the Magistrate's Report and Recommendation:

> This Petitioner's petition for a writ of habeas corpus can only be read in one way, as there was only one claim presented in the petition for a writ of habeas corpus; that being, the denial of Petitioner's Sixth Amendment right to counsel of his choice without any type of colloquy being conducted on record by the trial court to render any type of waiver by Petitioner to the right to counsel, voluntarily, knowingly or intelligently made while at the same time, compelling Petitioner to act pro se throughout the trial proceedings. This is the substance of this Petitioner's federal claim within his habeas corpus petition and any

other and all other statements within the Petition for a writ of habeas corpus were only included within the body of the petition to support this *one* claim submitted by this habeas Petitioner, and therefore, the learned Magistrate committed error by holding that this Petitioner's habeas corpus petition "can be read two ways."

Objections at 2.

Similarly, the Magistrate's Report and Recommendation advised the petitioner that he should either delete the additional claims or clarify his position, so that "the matter may proceed in this forum." Report and Recommendation at 14. Requesting the court "to bear in mind that that [he] is not an attorney at law," petitioner attempted to respond to the Magistrate's concerns, and clearly set out, in his Objections to the Report and Recommendations, the factual and legal basis of his sixth amendment claim of involuntary waiver. Objections at 3–5.

■ Though appellant's petition may have been inartfully drafted, it was the Commonwealth, not the petitioner, that construed it as containing more than one claim. We find the record below reveals that McMahon clarified any ambiguity with respect to the Petition for a Writ of Habeas Corpus and adequately informed the court that the Petition contained only one issue. Further, even if this court were to agree with the Commonwealth and the district court that the petition raises multiple claims, we would construe petitioner's Objections to the Report and Recommendation as waiving any unexhausted claims. *See, e.g., Rock v. Coombe*, 694 F.2d 908 (2d Cir.1982), *cert. denied*, 460 U.S. 1083, 103 S.Ct. 1773, 76 L.Ed.2d 345 (1983) (petitioner may abandon unexhausted claims in order to obtain a federal court hearing on exhausted claims). However, since we read the petition as raising only one exhausted claim of a denial of his sixth amendment right to counsel, we need not find petitioner has waived his other claims. Thus, we will reverse the decision of the district court dismissing the petition as mixed.

### III.

In *United States v. Welty,* 674 F.2d 185 (3d Cir.1982), this court held that when a defendant, on the eve of trial, seeks new counsel or, in the alternative, seeks to represent himself, the district court must engage in two lines of inquiry:

> First, the court must decide if the reasons for the defendant's request for substitute counsel constitute good cause and are thus sufficiently substantial to justify a continuance of the trial in order to allow new counsel to be obtained. If the district court determines that the defendant is not entitled to a continuance in order to engage new counsel, the defendant is then left with a choice between continuing with his existing counsel or proceeding to trial *pro se,* thus bringing into play the court's second stage of inquiry. Since the decision to proceed *pro se* involves a waiver of the defendant's sixth amendment right to counsel, the district court then has the responsibility of ensuring that any decision by the defendant to represent himself is intelligently and competently made.

*United States v. Welty,* 674 F.2d at 187 (citing *Johnson v. Zerbst,* 304 U.S. 458, 465, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938)). Even when the trial judge suspects that the defendant's contentions are disingenuous, and motives impure, a thorough and searching inquiry is required. "Although ... improper tactics by an accused cannot be allowed to succeed, at the same time a trial judge cannot be permitted to go forward when a defendant does not fully appreciate the impact of his actions on his fundamental constitutional rights." *United States v. Welty,* 674 F.2d at 187.

### A.

#### 1.

■ This court observed in *Welty* that when a defendant requests substitution of counsel on the eve of trial, "the district court must engage in at least some inquiry as to the reasons for the defendant's dissatisfaction with his existing attorney." *United States v. Welty,* 674 F.2d at 187. Certainly "there is no absolute right to a particular counsel," *United States ex rel. Carey v. Rundle,* 409 F.2d 1210, 1215 (3d Cir.1969), *cert. denied,* 397 U.S. 946, 90 S.Ct. 964, 25 L.Ed.2d 127 (1969), and the right to chose a particular lawyer "must be balanced against the requirements of the fair and proper administration of justice." *United States v. Rankin,* 779 F.2d 956, 958 (3d Cir.1986). Nevertheless, the trial court still has the "duty to inquire into the basis for the client's objection to counsel and should withhold a ruling until reasons are made known." *Brown v. United States,* 264 F.2d 363, 369 (D.C.Cir.) (en banc) (Burger, J., concurring in part), *cert. denied,* 360 U.S. 911, 79 S.Ct. 1299, 3 L.Ed.2d 1262 (1959).

#### 2.

■ The trial judge, in the present matter, granted McMahon's attorney's motion to withdraw upon *counsel's* communication that he knew of no reasonable basis for his discharge, and the court's independent view that the defendant's motion for a continuance was to "thwart the end of justice."[7] Other than the trial judge's reference to counsel's communication to the court that he had represented petitioner diligently, the record reveals absolutely no

---

7. The trial judge ordered:

AND NOW, to-wit, this 4th day of January, 1982, counsel for the Defendant advising the Court that Defendant has terminated his professional services and requesting a continuance from the jury trial as scheduled to commence January 6, 1982 and counsel advising the court that he knows of no reasonable basis for his discharge but on the contrary has diligently pursued his client's defense and the court concluding that the Defendant's motion is to thwart the end of Justice and a deliberate delay to prevent him from commencing the

trial does deny the motion to continuance, does grant defense counsel's motion to withdraw and appoints Mr. Jon Marti, Esq., Assistant Public Defener [sic], to represent the Defendant on a standby basis to advise the Defendant of any inquiries Defendant may make concerning the law.

Order Denying Motion for Continuance, Granting Defense Counsel's Motion to Withdraw, and Appointing Standby Counsel, Commonwealth v. McMahon, Crim. No. 155 (Pa.Ct. of Common Pleas January 4, 1982), *reprinted in* Joint Appendix at 6.

inquiry by the trial court into appellant McMahon's dissatisfaction with counsel.[8]

Indeed, the record reflects a conscious attempt by the court to *avoid* such an investigation. The trial judge, during the January 6 "colloquy," simply informed the defendant: "you discharged your counsel ... and I am going to try your case without counsel." Record at 1. Moreover, in response to a request by the district attorney that the judge engage in a "brief colloquy on that point so Mr. McMahon discloses on the record what had transpired between he and his former counsel," Record at 3, and that the judge inform the defendant of McMahon's right to plead guilty, the trial judge stated:

THE COURT: No, I really don't think that is necessary. I will ask you this, Mr. McMahon, I was advised by Mr. Kubiak that you in fact discharged him in this case.

THE DEFENDANT: Yes sir, I did, prior to the time he says. I discharged him prior to the date he said I did.

THE COURT: Do you want to continue with your jury trial?

THE DEFENDANT: Yes, I do, your Honor.[9]

THE COURT: Very well.

Record at 3.

If anything, the record certainly suggests that defendant McMahon was either a difficult client to represent, or a difficult client to please. By the date of trial, he had already been represented by at least two attorneys, and had declined the services of another. However, as this court has noted:

While we can understand, and perhaps even sympathize, with the frustration and exasperation of the [trial judge], even well-founded suspicions of intentional delay and manipulative tactics can provide no substitute for the inquiries necessary to protect a defendant's constitutional rights.

*United States v. Welty*, 674 F.2d at 189.

■ The matter of continuance is traditionally within the discretion of the trial judge who must necessarily be given wide latitude in scheduling trials. *Morris v. Slappy*, 461 U.S. 1, 11, 103 S.Ct. 1610, 1616, 75 L.Ed.2d 610 (1983).[10] Nonetheless, this court has also noted that "a rigid insistence on expedition in the face of a justifiable request for delay can amount

---

8. Similarly, the record is naked of any discussion between petitioner and the court regarding the defendant's reluctance to be represented by the Public Defender's Office.

9. It is unclear from the record whether the defendant's answer to this question can be interpreted as an affirmation of his desire to proceed with the case *pro se*, or as a negative response to the district attorney's query as to whether he wished to plead guilty.

10. In *Morris v. Slappy*, 461 U.S. 1, 103 S.Ct. 1610, 75 L.Ed.2d 610 (1982), the Supreme Court held that the sixth amendment did not guarantee an accused a "meaningful attorney-client relationship." *Id.* at 14, 103 S.Ct. at 1617. Petitioner, in *Slappy*, had requested a continuance after his original public defender was hospitalized, and had been replaced six days prior to trial by a senior trial attorney in the Public Defender's Office. The Court of Appeals for the Ninth Circuit held that the petitioner had been denied his sixth amendment right to a "meaningful attorney-client relationship," since the trial court had failed to inquire into the probable length of the original attorney's absence, and thus never weighed the petitioner's interest in continued representation by that attorney with

the State's interest in proceeding with the scheduled trial. *Slappy v. Morris*, 649 F.2d 718 (9th Cir.1981). The Supreme Court reversed, noting that "[n]o court could possibly guarantee that a defendant will develop the kind of rapport with his attorney—privately retained or provided by the public—that the Court of Appeals found part of the Sixth Amendment guarantee of Counsel." *Slappy*, 461 U.S. at 14, 103 S.Ct. at 1617.

Appellant McMahon's petition is clearly distinguishable from that presented in *Slappy*. Importantly, the result of the trial court's conduct in the instant matter was that petitioner was required to proceed *pro se*, whereas in *Slappy* the defendant was simply required to be represented by an attorney with whom he had not developed a "meaningful" relationship, and was denied continued representation by a particular attorney. The Court was careful to note that in disposing of the petitioner's "meaningful relationship claim," the case was distinguishable from those in which the defendant had no counsel. *Slappy*, 461 U.S. at 14 n. 6, 103 S.Ct. at 1617 n. 6. Moreover, *Slappy* does not present a situation in which the trial court allowed counsel to withdraw from the case, and then refused to engage in any on-the-record colloquy with the defendant regarding the reasons for counsel's termination.

to a constitutional violation." *United States v. Rankin*, 779 F.2d at 960. By granting defense counsel's motion to withdraw and denying defendant's motion for a continuance to allow new counsel to be obtained without engaging in *any* on-the-record inquiry as to the reasons for the defendant's dissatisfaction with his existing attorney and the Public Defender's Office, we find that the trial court's conduct amounted to such a violation. As we noted in *Welty*, "in the total absence of any inquiry into the cause of [the defendant's] dissatisfaction with [his attorney], we have no way of knowing whether [the defendant] may have had some valid ground for seeking a substitution of counsel." *United States v. Welty*, 674 F.2d at 190.

### B.

We are thus of the view that the trial judge improperly denied petitioner's motion for a continuance without first engaging in an inquiry into the reasons for petitioner's dissatisfaction with his representation. However, even if we were to have found the trial judge's denial of petitioner's continuance motion proper, we still find his conduct fell below the standards announced in *United States v. Welty, supra.*

■ Assuming a continuance is properly denied, the second inquiry a court must make under *Welty* is whether to permit the defendant to proceed *pro se*—i.e., whether a defendant knowingly and intelligently waives his right of counsel, "with an awareness of the dangers and disadvantages inherent in defending oneself." *United States v. Welty*, 674 F.2d at 188. We find that the trial court failed to engage in such an inquiry.

### 1.

The sixth amendment guarantees "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the assistance of counsel for his defense," withholding the power and authority to deprive an accused of life or liberty unless the accused has or waives the assistance of counsel. *Johnson v. Zerbst*, 304 U.S. 458, 463, 58 S.Ct. 1019, 1022, 82 L.Ed. 1461 (1937). The Supreme Court has recognized that the sixth amendment "stands as a constant admonition that if the constitutional safeguards it provides be lost, justice will not 'still be done.' " *Id.* at 462, 58 S.Ct. at 1022.[11]

While the Supreme Court has recognized that a criminal defendant has the constitutional right to defend himself at trial, *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), the Court has been scrupulous in requiring that the waiver of the sixth amendment right to assistance of counsel be voluntary and be "knowing and intelligent." *Edwards v. Arizona*, 451 U.S. 477, 482, 101 S.Ct. 1880, 1884, 68 L.Ed.2d 378 (1981); *Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). Noting that a "waiver is ordinarily an intentional relinquishment of a known right or privilege," *Johnson v. Zerbst, supra*, 304 U.S. at 464, 58 S.Ct. at 1023, the Supreme Court has cautioned "that 'courts indulge in every reasonable presumption against waiver' of fundamental constitutional rights and that we 'do not presume acquiescence in the loss of fundamental rights.' " *Id.* (citations omitted). The Court has added that:

[a]lthough a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self representation, so that the record will establish that "he knows what he is doing and his choice is made with eyes open."

*Faretta v. California, supra*, 422 U.S. at 835, 95 S.Ct. at 2541, (quoting *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279, 63 S.Ct. 236, 241, 87 L.Ed. 268 (1942)). Whether a defendant has knowingly and intelligently relinquished his rights "depends in each case 'upon the particular facts and circumstances surrounding that case, including the background,

---

11. A defendant's sixth amendment right to assistance of counsel is made applicable to the states by the fourteenth amendment. *Argersing-* *er v. Hamlin*, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972); *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963).

experience, and conduct of the accused.'" *Edwards v. Arizona*, 451 U.S. at 482, 101 S.Ct. at 1884 (quoting *Johnson v. Zerbst*, 304 U.S. at 464, 58 S.Ct. at 1023); *see Piankhy v. Cuyler*, 703 F.2d 728, 730 (3d Cir.1983).

In order to protect this fundamental right, and to ensure that a defendant appreciates the "dangers and disadvantages of self-representation," this court has held that "the ... court should advise [the accused] in unequivocal terms both of the technical problems he may encounter in acting as his own attorney and of the risks he takes if his defense efforts are unsuccessful." *United States v. Welty*, 674 F.2d 185, 188 (3d Cir.1982); *see Piankhy v. Cuyler*, 703 F.2d at 730. We noted that the trial court should, for example, tell the defendant that he will have to conduct his defense in accordance with the Federal Rules of Evidence and Criminal Procedure, rules with which the defendant may not be familiar; that the defendant may be hampered in presenting his best defense by his lack of knowledge of the law; and that the defendant's effectiveness in presenting his defense may be diminished by his dual role as attorney and accused. *Id.* In addition, we noted,

> [to] be valid [a defendant's] waiver must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter.

*Id.* at 188–89 (quoting *Von Moltke v. Gillies*, 332 U.S. 708, 724, 68 S.Ct. 316, 323, 92 L.Ed. 309 (1948) (Black, J., plurality opinion)).

■ Moreover, we held in *Welty* that a defendant's statement that he is aware of his constitutional right to counsel and desires to waive this right, does not relieve the judge of the responsibility to ensure the waiver is knowledgeable. "'A judge can make certain that an accused's professed waiver of counsel is understandingly and wisely made only from a penetrating and comprehensive examination of all the circumstances,' ... and only after bringing home to the defendant the perils he faces in dispensing with legal representation." *United States v. Welty*, 674 F.2d at 189 (quoting *Von Moltke v. Gillies*, 322 U.S. at 724, 68 S.Ct. at 323). It is appropriate for this searching inquiry to appear upon the record. *Id.* (citing *Johnson v. Zerbst*, 304 U.S. at 465, 58 S.Ct. at 1023).

2.

The present record reflects a total absence of any "searching inquiry" or colloquy as to defendant's understanding of the dangers and disadvantages he faced proceeding *pro se*. The trial court did not explain to the defendant the nature of the charges against him; the court "failed to inform [McMahon] of 'the range of allowable punishments' and of the 'possible defenses to the charges and circumstances in mitigation thereof.'" *Piankhy v. Cuyler*, 703 F.2d at 731 (quoting *United States v. Welty*, 674 F.2d at 188–89). Rather, the only information the court provided the defendant was the following:

> THE COURT: ... Now my duty as the judge is to advise you of the procedure. I have no duty to advise you of the law or to advise you on any decisions you should make. Mr. Marti will advise you on the law.
>
> Now the procedure is the Commonwealth will proceed first with its case, present all the evidence it has to indicate your guilt. After that you have a right to present your defense. You have a right to testify in your own behalf and you have a right to present your witnesses. You need not testify unless you freely elect to do so. You have a right to remain silent and not testify. If you do testify you will be subjected to cross examination as will your witnesses.
>
> You have a right to object to any evidence as the case proceeds if you think objection is proper. The Court of course will rule on it just as if you were represented by counsel. Otherwise the entire procedure will be just as if you were represented by counsel. In effect what

you have done is discharged your counsel and the Commonwealth is prepared and has a right to proceed at this time in the case.

Record at 1–2. While the trial judge apprised the defendant of the procedure to be used in his ensuing trial, he failed to ensure that the defendant's decision to proceed *pro se* in that trial was made with "eyes open"—that McMahon truly understood the consequences of dismissing his attorney and electing to represent himself.

■ Absent any such inquiry, we have no way of assessing whether McMahon's decision to represent himself was made knowingly and intelligently. *See United States v. Welty*, 674 F.2d at 192. In light of the Supreme Court's admonition that " 'courts indulge every reasonable presumption against waiver' of fundamental constitutional rights," *Johnson v. Zerbst, supra*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461, we conclude that the petitioner did not effectively waive his sixth amendment right to counsel in this case.[12]

### IV.

Viewing all the circumstances of this case, we hold that the trial court failed properly to determine whether McMahon's waiver of his sixth amendment right of counsel was knowing and intelligent. The record does not show either that the trial court adequately inquired into the reasons for petitioner's discharge of his original counsel, or, more significantly, that the petitioner understood the consequences of electing to represent himself. We therefore conclude that the petitioner did not effectively waive his sixth and fourteenth amendment rights in this case.

We will reverse the district court's order of August 8, 1986, and we will remand the cause with instructions to enter an order

granting the writ of habeas corpus unless a new trial is held within a reasonable time.

---

**12.** We noted in *Welty* that a "harmless error" analysis was inappropriate in the context of a waiver of counsel claim, since the right to counsel is "among 'those constitutional rights [which are] so basic to a fair trial that their infraction can never be treated as harmless error.' " *United States v. Welty*, 674 F.2d at 194 (quoting *Chapman v. California*, 386 U.S. 18, 23 & n. 8, 87 S.Ct. 824, 828 & n. 8, 17 L.Ed.2d 705 (1967)).