

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-10-2003

# Cooley v. English

Precedential or Non-Precedential: Non-Precedential

Docket No. 01-3494

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"Cooley v. English" (2003). *2003 Decisions.* Paper 281.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/281

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 01-3494
_____

KELLEY TROY COOLEY

Appellant,

v.

THOMAS ENGLISH, Superintendent;
MICHAEL FISHER, Attorney General;
JOSEPH P. CONTI, DISTRICT ATTORNEY

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

(W.D. PA. CIV. NO. 99-CV-00078E)
District Judge:  The Honorable Sean McLaughlin

_____

Submitted Under Third Circuit LAR 34.1(a)
July 11, 2003

BEFORE: NYGAARD and SMITH, Circuit Judges and IRENAS,* Senior District Judge.


(Filed   September 10, 2003 )


*      Honorable Joseph E. Irenas, Senior District Judge for the United States District Court for the District of New Jersey, sitting by designation.

---

## OPINION OF THE COURT

---

IRENAS, <u>Senior District Judge</u>

### I.

Presently before the Court is Kelley Troy Cooley's petition for habeas corpus relief under 28 U.S.C. § 2254. Cooley claims that he did not knowingly and intelligently waive his Sixth Amendment right to counsel at a pretrial hearing and as a result was effectively denied counsel for the two months preceding his second trial for burglary, assault, and related charges. He thus seeks a new trial.[1]

Approximately two months before the second trial, Cooley's attorney moved to withdraw as counsel based on Cooley's unhappiness with his services. At that point the trial judge should have engaged in a detailed inquiry as to whether such request was reasonable. *United States v. Welty*, 674 F.2d 185, 187 (3d Cir. 1982). If the court found the application to be without merit, it should then have given defendant a choice of retaining current counsel or proceeding *pro se*. If the defendant elected to go *pro se,* the

---

[1]On September 4, 2002, a panel of this court issued a certificate of appealability under 28 U.S.C. § 2253(c)(1) on the issue of whether the appellant "was denied his federal constitutional rights when the trial court failed to instruct him regarding the consequences of waiving his right to counsel." Appellee's rights to argue petitioner's failure to exhaust remedies and the statute of limitations contained in 28 U.S.C. § 2244(d) were preserved. Appellant was denied a certificate of appealability on the claim that his trial counsel had a conflict of interest. ( <u>See</u> Add. G to Appellant's brief.)

court should have then engaged in a colloquy with defendant to ensure that he understood the consequences of his waiver. *Faretta v. California,* 422 U.S. 806, 835 (1975).

The trial court did not follow either *Welty* or *Faretta.* It did not engage in any type of meaningful inquiry as to whether there was good cause for the dismissal of Cooley's counsel. When, without inquiry, the trial judge determined that there was no good cause for discharging counsel, she nevertheless granted counsel's motion to be relieved and directed that Cooley either retain private counsel or proceed *pro se* even though Cooley clearly did not have the means to retain private counsel and even though he at no time indicated a desire to proceed *pro se.* Furthermore, the court did not conduct the required colloquy to ensure that Cooley was aware of the consequences of proceeding without counsel. As a result, for the two months before the retrial Cooley was without counsel, and it was not until the day of trial that new counsel took over defense of the case.

We find that Cooley's Sixth Amendment right to counsel (incorporated by the Fourteenth Amendment) was violated by the procedures followed by the trial court and that such error was not harmless. Thus, we will reverse the decision of the District Court and remand the case with directions to issue the writ of habeas corpus, on the proviso that Pennsylvania shall, within 120 days, conduct a new trial.

**II**.

On August 27, 1992, Cooley allegedly committed burglary and aggravated assault

at a residence occupied by his estranged wife. Angelo Arduini from the Public Defender's Office represented Cooley at his first trial on March 11, 1993, before Judge Fischer in the Court of Common Pleas of Erie County, Pennsylvania. The trial ended in a mistrial after a prosecution witness testified during cross-examination that Cooley had previously been in jail.

On April 6, 1993, at Cooley's request, Arduini filed a motion to withdraw as counsel. The motion hearing before Judge Domitrovich on Monday, April 12, 1993, began with Arduini explaining the history of his representation of the Defendant and why he thought Cooley wanted to remove him as counsel. His explanation prompted the following exchange:

> **The Court**: So he wants to represent himself?
>
> **Mr. Arduini**: I don't know what he wants, Your Honor. That's why I brought him here before the Court.
>
> ...
>
> **The Court**: Mr. Cooley, at this time I'm going to give you an opportunity to try to talk to Mr. Arduini because I'm going to tell you right now you've got two choices: You either will represent yourself or you will have Mr. Arduini represent you. So I'm going to give you an opportunity in the next ten to fifteen minutes to try to work out any personality conflicts that you have with Mr. Arduini because what I have heard so far from Mr. Arduini

3

and from Mr. Murray and the way you're talking with your attitude–

**The Defendant**: Your Honor, I don't have an attitude.

**The Court**: Yes, you do.

**The Defendant**: No, I don't. If you let me finish talking, you would understand what I'm saying.

**The Court**: You have an attitude problem. I'm going to give you ten to fifteen minutes–

**The Defendant**: There's nothing to work out with the man.

**The Court**: You want to represent yourself; is that it? No, you don't?

**The Defendant**: You don't want to hear what I got to say. What do I want to work out something with him for?

**The Court**: Did you hear what I said?

**The Defendant**: Don't matter.

**The Court**: Talk to him for the next ten to fifteen minutes.

**The Defendant**: No. For what?

**Mr. Arduini**: He doesn't want to talk to me, fine.

**The Defendant**: I want to finish what I have to say.

**The Court**: I have heard enough from you.

**The Defendant**: I have had two attorneys.

**The Court**: I don't like your tone of voice. I don't like your attitude.

**The Defendant**: You don't even know nothing about the case.

**The Court**: Take him away. Motion to withdraw granted.

**The Defendant**: Thank You.

**The Court**: He represents himself.

**The Defendant**: Right.

**Mr. Arduini**: Thank you Your Honor.

**The Defendant**: Don't matter. Don't want to hear nothing I got to say.

(App. Two at 125a-129a).

At this point the Court concluded the proceedings. The entire hearing lasted seven minutes, beginning at 9:14 am and ending at 9:20 am. The Order of the Court granting Arduini's Motion to Withdraw Counsel directed Cooley to proceed *pro se* or retain private counsel. (App. Two at 131a). On April 13, 1993, the day after the hearing, Cooley filed a *pro se* Motion for a Court Appointed Attorney, (Id. At 132a), which was denied by the Court. (Id. at 138a).

A Scheduling Hearing for Cooley's second trial was held before Judge Domitrovich two months later on June 17, 1993. Michael Palmisano from the Public Defender's Office and Patrick Carey from the District Attorney's Office were also present at the hearing.[2] Palmisano informed the court that he visited Cooley twice in prison over

---

[2] Although Palmisano was present at the hearing, it appears from the record that Defendant was still proceeding Pro Se at the time. (App. Two at 141a).

5

the past two months and at the Petitioner's request proposed a plea bargain to the District Attorney's office, which was refused. Upon hearing this, the Court affirmed that "This is after the Court Order indicating that the public defender is not to represent him?" (App. Two at 143a).

At the Scheduling Hearing, Palmisano also informed the Court that he didn't interview Cooley's wife or other witnesses because he didn't feel it was proper under the circumstances. (Id. at 144a). The Court then told Cooley that he would have stand-by counsel in his second trial. At this point in the Hearing, Cooley expressed his desire for a non-jury trial, to which the prosecutor and the Court agreed. Although the Court adjourned briefly so that Cooley could sign the proper waiver forms with the prosecutor, there was no colloquy with the court before Cooley waived his right to a jury.

Cooley's second, non-jury trial began on June 21, 1993. The Court asked Cooley whether or not he was proceeding *pro se* or whether he would accept Palmisano as his standby counsel. Cooley responded that he would let Palmisano represent him because he had not done much to prepare. Cooley was convicted of Burglary, Aggravated Assault, False Reports to Law Enforcement Authorities, Criminal Mischief, Disorderly Conduct, Harassment, Criminal Trespass, and Terroristic Threats. On August 3, 1993, Cooley was sentenced to 6 ½ to 15 years incarceration for aggravated assault, a consecutive 1 to 5 years incarceration for burglary, a consecutive 1 year probation for false reports to law enforcement, and a consecutive 4 years probation for terroristic threats. Following a

6

hearing on September 1, 1993, Judge Domitrovich modified the sentence for aggravated assault to 5 ½ to 14 years.

In December 1994, Cooley filed his first PCRA[3] action, which was denied by the Court on April 11, 1995. Counsel for Cooley appealed to the Superior Court of Pennsylvania, but the Superior Court affirmed on January 11, 1996.

At this point Cooley's appellate counsel withdrew and Cooley applied to the Supreme Court of Pennsylvania to have new counsel appointed for his Petition for Allowance of Appeal. On remand from the Supreme Court of Pennsylvania, the Common Pleas Court of Erie County denied Cooley counsel. After this denial, on September 12, 1996, the Common Pleas Court granted Cooley's counsel's Motion to Withdraw. Cooley then filed a *pro se* Petition for Allowance of Appeal with the Pennsylvania Supreme Court, which was denied on March 10, 1997.

Cooley filed a second PCRA motion which was denied as untimely under Pennsylvania's then new statute of limitations law for PCRA petitions on September 2, 1997. The Superior Court affirmed the denial on July 21, 1998, finding the petition to be untimely. The Supreme Court of Pennsylvania denied Cooley's Petition for Allowance of Appeal on January 14, 1999.

On February 26, 1999, Cooley filed a Federal Habeas Corpus Application in District Court and his request for counsel to represent him in the matter was denied. The

---

[3] Pennsylvania Post-Conviction Relief Act, Title 42 Pa.CS §9541, *et. seq.*

District Court adopted the opinion of Magistrate Judge Baxter and denied relief in an order dated September 4, 2001. Cooley filed a timely Notice of Appeal to this Court on September 17, 2001.

## III.

A statute of limitations defense is not a jurisdictional bar to review, but an affirmative defense which must be raised by the defendant. *Robinson v. Johnson*, 313 F.3d 128, 131-32 (3d Cir. 2002). Defendants in this case concede that the statute of limitations defense was not raised below and should be considered waived. (Appellee Br. at 3).

## IV.

The District Court found that Cooley's claim concerning the Court's failure to issue a proper colloquy was unexhausted because Cooley did not fairly present it in his petition for allowance of appeal to the Pennsylvania Supreme Court in the first PCRA proceeding. State prisoners who have not fairly presented their claims to the highest state court have failed to exhaust those claims. 28 U.S.C. § 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838 (1999). Federal Courts must refrain from addressing the merits of any claim raised by a habeas petitioner that was not properly exhausted in the state court. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

We find that the District Court was incorrect and hold that Cooley fairly presented and exhausted his claim by raising it at several points in his first *pro se* Petition for

8

Allowance of Appeal. *Cf. Lines v. Larkins*, 208 F.3d 153, 161-62 (3d Cir. 2000) (discussing the manner in which a claim must be presented in a petition for allowance of appeal and holding that Lines' claim was unexhausted because "he [did not] discuss his underlying claims at any point in his Petition for Allowance of Appeal"). In his "Statement of the Case," Cooley argued that "The petitioner was ordered to represent himself, without a proper waiver of his right to counsel." (App. Two at 541a) . In the section entitled "Reasons Relied Upon for Allowance of Appeal," Cooley again argued that "the petitioner was ordered to represent himself without a knowing and intelligent waiver of his rights to counsel." (Id. at 551a).

Cooley fairly presented the current claim to the Pennsylvania Supreme Court through these two statements in his 1996 Petition for Allowance of Appeal, and as a result we find that his state remedies are exhausted and we are entitled to address his claim on the merits.

## V.

When a defendant requests a substitution of counsel or chooses to represent himself, the court must engage in two lines of inquiry. *United States v. Welty*, 674 F.2d 185, 187 (3d Cir. 1982). First, the court must decide if the reasons for the defendant's request for substitute counsel constitute good cause. *Id*. at 187. If the court determines that the defendant has not shown good cause, the defendant is left with choosing between his current counsel and proceeding to trial *pro se*. The decision to proceed *pro se*

involves a waiver of the defendant's Sixth Amendment right to counsel. This waiver requires the court to engage in a second line of inquiry, in order to ensure that any decision by a defendant to represent himself is knowingly and competently made. *Id*. at 188 (quoting *Johnson v. Zerbst*, 304 U.S. 458, 465 (1938); *Faretta v. California,* 422 U.S. 806, 835 (1975).

A.

Although it is true that there is no absolute right to particular counsel, *Welty*, 674 F.2d at 188 (quoting *United States ex rel. Carey v. Rundle*, 409 F.2d 1210, 1215 (3d Cir. 1969), substitution of counsel is warranted where the defendant can show good cause, "such as a conflict of interest, a complete breakdown in communication, or an irreconcilable conflict with his attorney." *Id*. at 188. When a defendant requests a substitution of counsel, the court must engage in at least some inquiry as to why the defendant is dissatisfied with his attorney. *Welty*, 674 F.2d at 187. *See United States v. Stubbs*, 281 F.3d 109, 117 (3d Cir. 2002). Only after proper inquiry and a finding that no good cause justifies a change in counsel can the court insist that the defendant choose between representation by existing counsel or proceeding to trial *pro se. Welty*, 674 F.2d at 188.

A Sixth Amendment violation occurs when the good cause determination is clearly erroneous or the district court made no inquiry into the reason for the defendant's request to substitute counsel. *McMahon v. Fulcomer*, 821 F.2d 934, 942 (3d Cir. 1987) (reversal

10

warranted where district court relieved defendant's appointed attorney without inquiring into reason for withdrawal).

In this case, the record reveals no inquiry by the Court as to the reason for Cooley's dissatisfaction with his assigned counsel.  Cooley was never afforded the opportunity to state or explain for the Court his reasons for asking Arduini to withdraw as counsel.  Although the Court allowed Cooley's counsel to explain why he thought Cooley wanted him dismissed, the Court cut off Cooley's attempt to explain after just a few sentences.

Consequently, the Court had no way of knowing whether  Cooley had some valid ground for seeking substitution of counsel.  Indeed, as noted in *Welty*, irreconcilable differences with one's attorney may be sufficient to establish good cause.  Without allowing even a perfunctory explanation from Cooley as to the apparently irreconcilable differences between him and counsel, the Court had no way of establishing whether or not good cause existed and therefore failed to make the first part of the required inquiry.

**B.**

Courts must "indulge every reasonable presumption against waiver" of the right to counsel.  *Stubbs*, 281 F.3d at 117 (quoting *Johnson*, 304 U.S. at 464).  Although defendants may achieve dismissal or waiver of counsel through conduct, the behavior warranting dismissal would have to be exceedingly inappropriate or dangerous.  *U.S. v. Goldberg*, 67 F.3d 1092 (3d Cir. 1995) (defendant's alleged conduct in threatening his

11

court-appointed attorney's life did not support forfeiture of Sixth Amendment right to counsel).

A court also cannot infer a valid waiver of the right to counsel based on its subjective impression of a defendant. *United States v. Salemo*, 61 F.3d 214, 221 (3d Cir. 1995). "[E]ven well founded suspicions of intentional delay and manipulative tactics can provide no substitute for the inquiries necessary to protect a defendant's constitutional rights." *Welty*, 674 F.2d at 189.

In the instant case, not only did the Court not entertain every presumption against waiver, but the Court was actually the first to suggest that Cooley wanted to proceed *pro se* and waive his right to counsel. (App. Two at 125a ). Although Cooley may be characterized as a difficult defendant, his conduct in no way rose to the level necessary to implicate a waiver of counsel through conduct. Indeed, Cooley was consistent in his desire to be represented by counsel and in his expressions to the court that he was not capable of representing himself.

The Court's repeated assertions that Cooley had an attitude problem suggest that its decision to discharge Arduini and limit Cooley to proceeding *pro se* or hiring private counsel (which he could not afford) was based on a subjective impression of Cooley as having an "attitude," rather than on an informed analysis of his reasons for wanting new counsel.

Once the Court made it clear that it was going to allow Arduini to withdraw and

12

refused to appoint additional counsel, the Court had the responsibility to engage in a colloquy with Cooley to satisfy itself that a choice of self representation was made "knowingly and intelligently, with an awareness of the dangers and disadvantages inherent in defending oneself." [4] *Welty*, 674 F.2d at 188. *See Faretta v. California*, 422 U.S. 806, 835 (1975); *Von Moltke v. Gillies*, 332 U.S. 708, 724 (1948).

A court should only accept a waiver after making a "searching inquiry" to satisfy the court that the defendant's waiver was understanding and voluntary. *Welty*, 674 F.2d at 188-189; *Stubbs*, 281 F.3d at 118. In order to ensure that a defendant appreciates the dangers and disadvantages of self-representation, the Court has the duty of advising the accused "in unequivocal terms both of the technical problems he may encounter in acting as his own attorney and of the risks he takes if his defense efforts are unsuccessful." *Welty*, 674 F.2d at 188; *McMahon* 821 F.2d at 945; *Piankhy v. Cuyler*, 703 F.2d 728, 730 (3d Cir. 1983); *See Von Moltke*, 332 U.S. at 724.

Not only did the trial court refuse to appoint new counsel for the two months preceeding Cooley's retrial, it made no effort to explore with defendant the disadvantages of self-representation. By this failure defendant was deprived of his Sixth Amendment

---

[4] There may be differences among the Courts of Appeal as to the requisite scope of inquiry a trial judge must make when a defendant elects to waive his right to counsel. *See McDowell v. United* States, 484 U.S. 980 (1987) (White, J., dissenting from denial of certiorari); Two other Courts of Appeals have supported the position of the Third Circuit interpreting the Supreme Court's decision in *Faretta* to require a searching inquiry. *See United States v. Edwards*, 716 F.2d 822, 824 (11th Cir. 1983), *United States v. Chaney*, 662 F.2d 1148, 1152 (5th Cir. 1981).

13

right to counsel up to the day the retrial started.

## VI.

Even when a trial court commits a constitutional violation, we must determine whether or not that error was harmless.[5] *Chapman v. California*, 386 U.S. 18, 21-22 (1967). In order to excuse a constitutional error as harmless, the Government must prove harmlessness beyond a reasonable doubt. *Id.* at 24; *United States v. Toliver*, 330 F.3d 607, 612 (3d Cir. 2003). An error is not harmless if there is a reasonable probability that it might have contributed to the conviction. *Id.* at 23; *Fayh v. State of Connecticut*, 375 U.S. 85, 86-87(1963).

By failing to conduct hearings required by both *Welty* and *Faretta* the trial court effectively denied Cooley counsel (without a meaningful waiver) for the two months immediately preceding his retrial. During this period, at a *pro se* pre trial appearance, he waived his right to a jury trial. He had no counsel to advise him of the consequences of this action, nor did the court engage defendant in any colloquy on the subject. At the same

---

[5] A constitutional violation is per se prejudicial only if the error occurs during a "critical stage" of the prosecutorial process. *Bell v. Cone*, 535 U.S. 685, 95-96 (2002); *United States v. Cronic*, 466 U.S. 648, 659, 662 (1984). What constitutes a critical stage requiring counsel depends upon "whether potential substantial prejudice to defendant's rights inheres in the...confrontation and the ability of counsel to help avoid that prejudice." *United States v. Wade*, 388 U.S. 218, 227 (1967). Since we find that the constitutional error in this case was not harmless, we need not determine whether the two months before trial constitute a "critical stage" of the prosecution. A recent Sixth Circuit decision has held that the pre-trial preparation period is a critical stage of criminal proceedings, during which the denial of counsel warrants application of *Cronic*'s presumption-of-prejudice analysis. *Mitchell v. Mason*, 325 F.3d 732 (6th 2003). *See, e.g. Powell v. Alabama*, 287 U.S. 45, 57, 53 (1932) (describing the pre-trial period as possibly the most critical period of the proceedings).

time he was denied the assistance of counsel in preparing the case for trial. The assistance of counsel might have resulted in more effective plea negotiations, the interviewing and preparation of witnesses, a better understanding of the consequences of waiving a jury, and the development of a trial strategy based on counsel's investigation, consultation with defendant, legal research and experience. We cannot hold that the absence of representation during this two month period was harmless beyond a reasonable doubt.

## VII.

For the reasons set forth above, the order of the district court dated September 4, 2001, is hereby reversed. This matter is hereby remanded to the district court with instructions to issue the writ conditioned upon the Commonwealth's right to conduct a new trial within 120 days.

15

TO THE CLERK:

Please file the foregoing opinion.


 /s/ Joseph E. Irenas
Senior District Judge