

1999 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-28-1999

# Coss v. Dist Atty Lackawanna

Precedential or Non-Precedential:

Docket 98-7416

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1999

Recommended Citation

"Coss v. Dist Atty Lackawanna" (1999). *1999 Decisions.* Paper 169.
http://digitalcommons.law.villanova.edu/thirdcircuit_1999/169

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1999 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed June 28, 1999

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 98-7416

EDWARD R. COSS, JR.,
          Appellant

v.

LACKAWANNA COUNTY DISTRICT ATTORNEY;
THE ATTORNEY GENERAL OF THE
COMMONWEALTH OF PENNSYLVANIA

On Appeal From the United States District Court
For the Middle District of Pennsylvania
(D.C. Civil No. 94-cv-1481)
District Judge: Honorable Thomas I. Vanaskie

Argued March 1, 1999

Before: STAPLETON, RENDELL, and ALDISERT,
Circuit Judges

(Filed June 28, 1999)

          Daniel I. Siegel, Esq. (ARGUED)
          Assistant Federal Public Defender
          Middle District of Pennsylvania
          100 Chestnut Street, Suite 306
          Harrisburg, PA 17101
           Attorney for Appellant

          William P. O'Malley, Esq. (ARGUED)
          Assistant District Attorney
          Lackawanna County Courthouse
          200 N. Washington Avenue
          Scranton, PA 18503
           Attorney for Appellees

OPINION OF THE COURT

RENDELL, Circuit Judge.

Edward Coss ("Coss" or "appellant") urges us to reverse
the District Court's denial of his motion for habeas corpus
relief filed pursuant to 28 U.S.C. S 2254. Coss argues that
his counsel's failure to subpoena certain witnesses to testify
at his trial constitutes ineffective assistance of counsel and
that the District Court erred in failing to so rule. For the
reasons stated below, we will reverse the District Court's
denial of Coss' ineffective assistance claim and remand to
the District Court to issue a conditional writ of habeas
corpus.

I. Facts[1]

On June 25, 1986, Coss, aged 17, attended a party at the
home of his sister, Carol Ann Frank. Also in attendance
were Coss' brothers, Jimmy and Bobby, Coss' girlfriend,
Sherry Kulick, Carol Ann's roommate, Lisa Frieto, and
Lisa's brother, George Frieto. Most of the guests at the
party consumed alcohol. During the course of the party, an
argument started between Sherry and Lisa, and thereafter,
caused other arguments to erupt among the other guests.
These arguments caused Carol Ann to throw everyone out
of her house. Arguments continued outside of Carol Ann's
house, including one between Jimmy, who was holding a
baseball bat, and Coss. As a result of all the noise, Carol
Ann's landlord called the police. The police arrived at the

_____

1. Although at his trial Coss' story differed from the facts we recount
here, the District Court clearly credited this version of events, as does
Coss implicitly by the very filing of his motion.

scene and tried to quell the fights that had developed on Carol Ann's front lawn. Coss was arrested for disorderly conduct and taken to police headquarters.

That night, Coss was held in the Lackawanna County Detention Facility for underage drinking. Coss damaged the cell in which he was placed and was ultimately charged with institutional vandalism, criminal mischief, criminal trespass, simple assault, theft by unlawful taking or disposition, aggravated assault, resisting arrest, terroristic threats, and disorderly conduct.

Coss met with his assigned attorney, RoseAnn McGowan, two times before his trial. The District Court made the finding of fact that Coss gave McGowan the names and addresses of several potential witnesses during their first meeting.[2] Counsel gave Coss no notice of the trial date but contacted him approximately one hour before the trial was to begin, at which point Coss drove directly to the courthouse, stopping only to pick up his brother Jimmy at school.

Coss' trial began on October 30, 1986 and lasted two days. At the trial, the officers who arrested Coss, Officers Adamitis and Wrobel, testified that when they arrived at the scene, individuals began scattering and that they grabbed Coss as he was running to his car. They testified that Coss

_____

2. Coss testified at the evidentiary hearing that in the first meeting, he and McGowan discussed "the whole entire story, how it happened, [and] who was involved." Coss' second and final meeting with McGowan prior to his trial occurred after a severance motion, requesting that the charges in connection with the simple assault be severed from those filed for the damage to the juvenile detention center, wasfiled in September 1986. Coss alleges that he and McGowan also discussed the names of possible witnesses at this meeting. McGowan did not testify regarding her version of what occurred at these meetings. She did testify at the evidentiary hearing that Coss did not give her the names of any witnesses he wanted her to subpoena, but then admitted that she did not specifically remember Coss' case and was instead testifying based on her general practice as a public defender.

The court also noted that, even if Coss did not provide the names to McGowan at this time, a cursory review of the police reports would have identified the names and addresses of some of these witnesses.

3

was screaming vulgarities and smelled of alcohol. They testified that, after being grabbed, Coss began pushing Officer Wrobel and was then arrested. They also testified that as Officer Adamitis attempted to grab Coss' brother Bobby, Coss punched Officer Adamitis in the face. This punch is the basis for Coss' simple assault charge, which is the charge at issue in this appeal. Finally, Officer Wrobel testified that an individual named George also hindered their attempts to arrest Bobby.

The only witnesses to testify on Coss' behalf were Coss and Jimmy.3 They testified that, on the night in question, they were in their sister's driveway, along with their brother Bobby, and had been there no more than fifteen minutes when two police officers arrived and began to assault Bobby and Coss. Coss stated that there was no party at Carol Ann's house that night, that he had not been drinking, that he did not curse or punch anyone, and that he did not know who the officer was referring to when he stated that an individual named George was at the scene. Jimmy corroborated this story, stating that there was no party at Carol Ann's, that they were only at Carol Ann's house to give her a camera, that he had not been drinking, and that Coss did not hit a police officer.

The charges ultimately presented to the jury were institutional vandalism and criminal mischief, simple assault, resisting arrest, and disorderly conduct. The jury convicted Coss of institutional vandalism, criminal mischief, and simple assault.4 Coss was sentenced on January 30, 1987, receiving six months to one year on the simple assault charge and six months to one year on the institutional vandalism charge. The simple assault and institutional vandalism/criminal mischief sentences ran consecutively. Coss has already served his sentence for

_____

3. McGowan did not suggest that Jimmy testify. Instead, Coss, on his own initiative, brought Jimmy to the trial and asked him to testify. McGowan admitted that she never subpoenaed, interviewed, or prepared Jimmy.

4. The institutional vandalism and criminal mischief result from Coss' destruction of the detention cell and are not related to Coss' interaction with the police outside of Carol Ann's house.

4

these convictions. Presently, he is serving a sentence based on charges from a 1990 conviction, unrelated to his 1986 convictions. Although he has served the term for the assault charge, Coss urges that his claim is not moot because the assault charge was used to enhance the sentence from a 1990 conviction for which he is still being punished.

II. Procedural Posture

On September 15, 1994, Coss filed a pro se petition for writ of habeas corpus pursuant to S 2254. Cossfiled an amended petition on November 29, 1995, and a Second Petition for Writ of Habeas Corpus on November 7, 1996. In the petition, Coss claimed that he was denied his Sixth Amendment right to effective assistance of counsel based on, among other things, counsel's failure to subpoena any of the witnesses he requested.5

On April 20, 1998, an evidentiary hearing was held to address Coss' ineffective assistance of counsel claims. At the hearing, each of the witnesses that Coss stated he had identified to counsel, namely, Carol Ann, Bobby, Sherry, and George, testified that McGowan never contacted them regarding Coss' trial and that Coss did not strike any police officer. Bobby, Sherry, and George testified that the first thing that the police did upon arrival was approach Coss and place him in the back of one of the police cars. They testified that the police then chased after Bobby, at which point George jumped on the back of one of the officers to try to hinder his attempt to arrest Bobby. Thus, according to these witnesses' testimony, Coss was in the police car the entire time the police attempted to arrest Bobby. According to the District Court, "McGowan's recollection of the case [at the evidentiary hearing] was somewhat sketchy."6

_____

5. Coss also alleged that his counsel was ineffective for empaneling two jurors adverse to Coss' interests, failing to have the institutional vandalism and criminal mischief charges dismissed, and failing to file post-trial motions. The District Court dismissed these other bases of ineffective counsel and Coss does not appeal their dismissal.

6. From a review of the evidentiary hearing transcript, we agree with the District Court's characterization of McGowan's memory of this case. McGowan was asked the following at the evidentiary hearing:

She conceded during the hearing that she did not
investigate the events surrounding Coss' arrest, electing not
to dispatch her investigator to interview any of the
witnesses at issue, and defended her actions by stating that
"Coss must have told her not to subpoena them." Dist. Ct.
Op. at 16 (June 10, 1998).

Following the hearing, the District Court denied Coss'
ineffective assistance of counsel claims. The court held
that, although McGowan's failure to subpoena these
witnesses "fell below an objective standard of
reasonableness," Coss failed to prove that he was
prejudiced by McGowan's failure because the verdict would

_____

       Q. Ms. McGowan, is your testimony, today, base d on actual
      recollection of this particular case, the Coss case, or are you
      testifying, based upon your general practice, as a Public Defender,
      when you were employed in the Public Defender's Office?

      A. It would -- it would be in part, yes, and  in part, no. Because
      certain portions that I've responded to, I have direct
recollection. As
      I said, I have direct recollection -- once I looked at the
sentencing
      report, I had direct recollection, exactly, what had transpired. I
      mean, once Mr. Coss told Judge Cottone, according to the
      transcript, that he was thinking about an appeal, but they were
      telling him this, and then I just -- I recalled. I do recall
distinctly,
      exactly, that they -- the they . . was advising him this way, and
he
      would not listen to me, okay? When we wanted tofile the Post-trial
      Motions on that, he did not want them. . . . That is direct
      recollection. Now, the other stuff may be general.

      . . . .

      Q. Ms. McGowan, what I'm asking you about is, do you,
      specifically, remember having this conversation with Eddie Coss
      about these witnesses or is your testimony that this is how you
      normally conduct yourself?

      A. No, no. No, no, no, it wouldn't be. I would  have asked him
      what about these people, what about these, what about these? You
      know, what were they doing there or how are they related to this?

This questioning proceeds, with McGowan answering the questions
regarding her failure to subpoena the witnesses in the form of what she
"would have" done or what Coss "must have" said, as opposed to telling
the court what she "did" or what Coss "said."

not have been different given the inconsistency in the accounts told by Coss and his brother on the one hand, and the witnesses and the police on the other. Coss appeals this decision of the District Court, arguing on appeal that the District Court erred in its application of the prejudice prong of the ineffective assistance of counsel test as stated in Strickland v. Washington, 466 U.S. 668 (1984).

III. Jurisdiction

Before proceeding to the merits of Coss' ineffective counsel claim, we will first review whether the District Court had subject matter jurisdiction over this habeas petition. Section 2254 confers jurisdiction on United States district courts to entertain petitions for habeas corpus relief only from persons who are "in custody" in violation of the Constitution or laws or treaties of the United States. The Supreme Court has interpreted S 2254 as mandating that the petitioner be "in custody" pursuant to the conviction or sentence he seeks to attack at the time his petition is filed. See Carafas v. LaVallee, 391 U.S. 234 (1968). A habeas petitioner does not remain "in custody" under a conviction "after the sentence imposed for it has fully expired, merely because of the possibility that the prior conviction will be used to enhance the sentences imposed for any subsequent crimes of which he is convicted." Maleng v. Cook, 490 U.S. 488, 492 (1989) (per curiam). A petitioner does, however, satisfy the "in custody" requirement for federal habeas jurisdiction when he asserts a challenge to a sentence he is currently serving that has been enhanced by the allegedly invalid prior conviction. Id. at 493. Moreover, in United States v. Tucker, 404 U.S. 443 (1972), the Supreme Court held that a prisoner could attack in a federal habeas proceeding an allegedly unconstitutional conviction, even if he has served in entirety the sentence resulting from the conviction, if that conviction had an effect on a present sentence. See also Young v. Vaughn, 83 F.3d 72, 76 (3d Cir. 1996) (holding that "a prisoner may attack his current sentence by a habeas challenge to the constitutionality of an expired conviction if that conviction was used to enhance his current sentence").

7

In this case, although Coss has already served the sentence resulting from the allegedly unconstitutional 1986 convictions, he is currently serving a sentence for an unrelated, 1990 conviction in the Court of Common Pleas of Lackawanna County for aggravated assault. Coss alleges that the sentence from his 1990 conviction was adversely affected by the 1986 assault conviction. The sentencing judge did, in fact, refer to Coss' 1986 conviction for assaulting a police officer in sentencing him to the top of the standard range for his 1990 conviction. Coss is thus attacking his prior conviction in an attempt to have his current sentence, which relied on his prior conviction, reevaluated. The District Court therefore appropriately construed Coss' petition as challenging the 1990 conviction for aggravated assault rather than his expired conviction, see id. at 73, and properly concluded that it had jurisdiction over his S 2254 motion petition. Id. We have appellate jurisdiction pursuant to 28 U.S.C. SS 1291 & 2253.

IV. Exhaustion

Absent a valid excuse, a habeas petitioner must present all federal claims to the state courts. 28 U.S.C.S 2254(b); see also Rose v. Lundy, 455 U.S. 509 (1982). "The exhaustion requirement ensures that state courts have the first opportunity to review federal constitutional challenges to state convictions and preserves the role of the state courts in protecting federally guaranteed rights." Evans v. Court of Common Pleas, Delaware County, Pa., 959 F.2d 1227, 1230 (3d Cir. 1992) (citing O'Halloran v. Ryan, 835 F.2d 506, 509 (3d Cir. 1987)). Of course, "[i]nexcusable or inordinate delay by the state in processing claims for relief may render the state remedy effectively unavailable" and exhaustion will be excused. Wojtczak v. Fulcomer, 800 F.2d 353, 354 (3d Cir. 1986).

Prior to filing his S 2254 petition, Coss had a petition challenging his 1986 conviction pending under Pennsylvania's Post Conviction Hearing Act (PCHA), 42 Pa. Cons. Stat. S 9541, et seq. (amended 1988), for approximately seven years without any activity. Under these circumstances, the District Court excused the

8

exhaustion requirement and we can find no fault with that determination. Appellant has not, however, presented to the Pennsylvania state courts his claim that the invalid 1986 conviction was used to enhance his subsequent conviction in 1990, the conviction being challenged by the underlying habeas petition. Nonetheless, we conclude that this is not a situation in which the District Court was faced with a mixed petition necessitating a dismissal under Rose v. Lundy. As was made clear by the Pennsylvania Supreme Court in Commonwealth v. Ahlborn, 699 A.2d 718 (1997), collateral relief is not available under either the Post Conviction Hearing Act or under the common law remedies of state habeas corpus or coram nobis for a petitioner who is not currently serving a sentence of imprisonment for the conviction he wishes to challenge, even if petitioner contends that collateral consequences stem from that conviction. Accordingly, insofar as state law clearly forecloses state court review of Coss' "collateral consequence" claim, the District Court properly excused exhaustion and entertained the claim on its merit. 7 See, e.g., Gibson v. Scheidemantel, 805 F.2d 135, 138 (3d Cir. 1986) (citing Duckworth v. Serrano, 454 U.S. 1, 3 (1981) (per curiam)).

V. Applicable Law

Because Coss submitted filings to the District Court both before and after the enactment of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), we think it necessary to briefly discuss the law governing this action. We conclude that the amendments brought about by AEDPA do not apply to this case as Coss' original petition and amendment were both filed prior to AEDPA's effective date. See Lindh v. Murphy, 521 U.S. 320 (1997); McCandless v. Vaughn, 172 F.3d 255 (3d Cir. 1999); United States v. Skandier, 125 F.3d 178 (3d Cir. 1997). Though Coss did file a "Second Petition" in November 1996, i.e.,

_____

7. We view Commonwealth v. Ahlborn not as erecting a "procedural bar," but as a statement that there is no available state remedy for the claim that the present sentence was incorrectly enhanced by an invalid prior conviction.

9

after the enactment of AEDPA, that petition did not add new claims, but merely waived, as was permitted by the District Court's order of October 23, 1996, those claims presented in his original petition that were determined by the District Court to be unexhausted. See, e.g., Rose, 455 U.S. at 510 (a petitioner may amend his petition to delete unexhausted claims); McMahon v. Fulcomer, 821 F.2d 934 (3d Cir. 1987) (same).

Amendments to applications for writs of habeas corpus are statutorily provided for by 28 U.S.C. S 2242, which states that such petitions "may be amended or supplemented as provided in the rules of procedure applicable to civil actions." See Rule 11 of the Rules Governing Section 2254 Cases; see also Calderon v. Ashmus, 523 U.S. 740, -- , 118 S. Ct. 1694, 1700 (1998) (Breyer, J., concurring) (amendments to habeas petitions under Rule 11 are governed by Fed. R. Civ. P. 15 unless otherwise expressly governed by the statute). In accordance with Rule 15(a), a party may amend a pleading after a responsive pleading has been served "by leave of court." Fed. R. Civ. P. 15(a). Moreover, pursuant to Rule 15(c)(2) of the Federal Rules of Civil Procedure, if the claim asserted in the amended petition "arose out of the conduct, transaction, or occurrences set forth" in the original petition, the amendment of the pleading relates back to the date the original petition was filed. As noted previously, the claims in Coss' second amended petition not only "arose out of the conduct" set forth in the original habeas petition and amendment, they were the same claims, minus those that were unexhausted. In fairness, we view his petition filed after AEDPA as tantamount to a further amendment to his initial filing, which he filed at the direction of the District Court, expressing Coss' intention to proceed with his exhausted claims. Therefore, we view all the claims raised as having been asserted in a petition filed prior to AEDPA's enactment date. Accordingly, under pre-AEDPA habeas requirements, Coss was obligated to obtain a certificate of probable cause in order to appeal from the District Court's judgment dismissing his habeas corpus petition.

The pre-AEDPA certificate of probable cause did not require specification of issues and placed the entire case

10

before the court of appeals. See Ramsey v. Bowersox, 149 F.3d 749, 759 (8th Cir. 1998); Herrera v. United States, 96 F.3d 1010, 1012 (7th Cir. 1996); see also United States ex rel. Hickey v. Jeffes, 571 F.2d 762 (3d Cir. 1978). The post-AEDPA certificate of appealability, on the other hand, requires specification as to which issues satisfy the standard set forth in 28 U.S.C. S 2253(c)(2), i.e., those issues for which the applicant has made a substantial showing of the denial of a constitutional right. In the instant case, rather than granting appellant a certificate of probable cause to appeal, the District Court granted Coss a certificate of appealability limited to his claim that counsel rendered constitutionally ineffective assistance by failing to subpoena witnesses on the assault charge. Under pre-AEDPA law we determined that it is inappropriate for a District Court to prescribe the issues or issue which may be considered in support of or in opposition to a judgment, Hickey, 571 F.2d at 766, and appellant is free to choose which claims to assert on appeal. In this case, however, because Coss, through his attorney, limited his request for a certificate of appealability on appeal to the one issue he believed to be of "arguable merit," that is, the ineffectiveness of counsel claim at issue, we see no reason to extend our review beyond the merits of that claim. Moreover, given our disposition of the appeal, we see little difference an expanded review would make.

VI. Discussion

At issue is the District Court's application of the prejudice prong of the Strickland ineffective assistance of counsel test. Since Coss' claim involves the legal component of an ineffective assistance of counsel claim, we exercise plenary review. See Parrish v. Fulcomer, 150 F.3d 326, 328 (3d Cir. 1998).

In order to obtain relief based on an ineffective assistance of counsel claim, a defendant must not only show that his counsel's performance was objectively unreasonable, but also that it prejudiced his case. See Strickland v. Washington, 466 U.S. at 692. The District Court denied Coss habeas relief, despite its finding that counsel's failure to subpoena the witnesses at issue was objectively

11

unreasonable, because Coss had failed to demonstrate prejudice.8

To prove prejudice under the second prong of the Strickland test, a defendant must "establish a reasonable probability -- one sufficient to undermine our confidence in the outcome -- that the jury's verdict would have been different if not for counsel's errors." United States v. Gray, 878 F.2d 702, 712 (3d Cir. 1989). The District Court reached its conclusion that Coss had failed to demonstrate prejudice based on the fact that the witnesses who testified at the evidentiary hearing painted a completely different picture of the incident leading to Coss' arrest from that told by Coss and Jimmy at trial. The testimony at the evidentiary hearing made clear that, on the night of the incident, Coss had been drinking at a party that had to be broken up by the police. This version of events is a far cry from Coss' trial testimony of a calm, quiet evening sabotaged by two rogue police officers. Assuming that, regardless of counsel's error, Coss still would have testified, and would have testified in the way that he did, the District Court reasoned that the failure to call these witnesses was not prejudicial to Coss, as their testimony, if offered, would only have suggested to the jury that Coss was lying on the witness stand and that Coss was drunk and excitable during the incident. Because this case turned on a credibility determination between Coss and the officers, the District Court reasoned that Coss could not have been prejudiced by counsel's failure to call witnesses who only would have contradicted Coss' version of the facts, destroying his credibility with the jury.9  The District Court

_____

8. We are not asked to review the issue of the reasonableness of counsel's actions as justifiable or strategic decisions. Here, Coss' attorney claimed no tactical merit to her failures except to say that she must have done what Coss wanted in not subpoenaing witnesses; nor does the government contest the District Court'sfinding that her conduct "fell below objective standards of reasonableness."

9. The District Court also considered that Carol Ann and Bobby's testimony would have been suspect since they are Coss' siblings, that Sherry's testimony would have been suspect since she was Coss' girlfriend, and that George Frieto's testimony, while seemingly beneficial to Coss in that he testified that it was he who attacked the officer, is also
not inconsistent with the officer's testimony that an individual named George, in addition to Coss, tried to hinder Bobby's arrest.

12

thus concluded that the outcome of the trial would have been no different, that is, Coss still would have been found guilty of assaulting the officer, absent counsel's failure.

We disagree with the District Court's reasoning. While it is unlikely that a court can determine with certainty the result of the proceedings absent counsel's error, we must examine the "breadth of the evidence" and examine whether it is sufficient to undermine our confidence that the case would have come out in the way that it did absent counsel's errors. United States v. Kauffman, 109 F.3d 186, 191 (3d Cir. 1997). Having examined the breadth of the evidence in this case, including the evidentiary hearing transcript, we conclude that there is a reasonable probability that, had counsel subpoenaed the witnesses at issue, Coss would not have been found guilty of assaulting the officer.

As a result of counsel's failure to conduct an investigation into the events surrounding Coss' arrest on the night of June 25, 1986, only Coss and his younger brother Jimmy testified in Coss' defense. It cannot be doubted that Coss and Jimmy decided to try to conceal what had occurred that evening -- that is, the fact that on the night in question they were drinking, underage, at a party -- during their testimony. Regardless of Coss' motivation to lie about the context of the incident provoking his arrest, he and Jimmy testified that Coss did not assault a police officer. At the evidentiary hearing held to investigate Coss' ineffective counsel claims, Carol Ann, Bobby, Sherry, and George all testified that there was a party at Carol Ann's house, that the people at the party were consuming alcohol, that a fight broke out, and that the police came to break up the fight. Most importantly, however, Carol Ann, Bobby, Sherry, and George testified consistently that Coss did not punch a police officer, and Bobby, Sherry, and George testified consistently that George jumped on a police officer's back when the officer assaulted Bobby. Finally, they also testified consistently that, at the time the officers arrested Bobby, which, according to the officers, is the time that Coss punched the officer, Coss was sitting in the police car with the door shut.[10]

_____

10. It is important to note that all witnesses at the evidentiary hearing were sequestered, thus bolstering the credibility of these witnesses' convincingly consistent versions of the critical events.

Thus, although the witnesses' rendition of what happened on the night in question conflicts in large part with Coss' original version of the story, all accounts of the evening are consistent in their most significant respect, the fact that Coss did not commit the assault alleged.

In our view, the District Court employed too narrow an approach in analyzing Coss' claim of prejudice. When it reached the prejudice prong of the Strickland test, the District Court stated that " `[p]rejudice' to a defendant from the failure to call witnesses should be assessed in the context of the other testimony presented by the defense witnesses." Dist. Ct. Op. at 18 (June 10, 1998) (emphasis added). The District Court then asked whether the result of this trial would have been any different if, instead of only Coss and Jimmy testifying in Coss' defense, Coss, Jimmy, and the other four witnesses had testified in Coss' defense, assuming not only that Coss would still testify, but would tell the tale that he did at trial.

Strickland requires that a court consider "the totality of the evidence before the judge or jury" in determining prejudice. 466 U.S. at 695. It does not require, however, the court to ignore the way in which the "totality" would present itself if counsel's conduct had been objectively reasonable. Strickland also recognizes that some errors are so great that a court cannot merely recall the proceedings as they occurred with counsel's error, and then, as the District Court did here, merely add the evidence not presented to determine the alternative outcome of the trial absent counsel's mistake. "Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect." Id. at 696-97.

Here, counsel's error had a pervasive effect, altering the entire evidentiary picture at trial. The testimony of the witnesses not presented should not be considered as merely a hypothetical supplement to the evidence offered, with the remainder of the trial presumed to unfold as it actually did. Considering the totality of the evidence, we believe that, had counsel subpoenaed the witnesses and heard from them their version of the events, including the fact that, although the police were partially correct in their

14

allegations, it was George, not Coss, who assaulted the officer, she would not have presented at trial all versions of the evening's events, including Coss' clearly fictional rendition. When we assume the reasonably probable outcome without counsel's ineffectiveness, we must also assume a scenario that envisions counsel's acting effectively.11 The District Court should have realized and considered the different course that the trial would probably have taken had counsel acted in an objectively reasonable manner by subpoenaing and interviewing these witnesses, and then presenting a defense consistent with their testimony. If counsel had interviewed these witnesses, we believe that there is a reasonable probability that Coss would not have testified at all, or that Coss would have testified consistently with the other witnesses, thus avoiding the contradictory testimony that troubled the District Court.

We also note that recent Supreme Court jurisprudence has provided additional insight into the "outcome" test, which suggests that, in determining whether a defendant was prejudiced by counsel's ineffectiveness, we should also inquire whether counsel's conduct rendered the verdict "unreliable." Because the outcome test can produce untoward results depending on the facts, the Supreme Court has emphasized that the prejudice inquiry, at its core, involves concepts of reliability and fairness. In Lockhart v. Fretwell, 506 U.S. 364 (1993), the Supreme Court was faced with the question of "whether counsel's failure to make an objection in a state criminal sentencing proceeding -- an objection that would have been supported by a decision which subsequently was overruled -- constitutes `prejudice' " under Strickland. 506 U.S. at 366. The court of appeals, in a divided opinion, had upheld

_____

11. In fact, as pointed out by appellant, if counsel had put both Coss and the witnesses at issue on the stand and presented an inconsistent theory of defense, that in itself could constitute ineffective assistance. See Bland v. California Dept. of Corrections, 20 F.3d 1469, 1479 (9th Cir. 1994). Of course, counsel cannot rely on Bland to say that it was proper for her not to offer the witnesses' testimony in her attempt to present a consistent theory of defense, since she did not interview these witnesses to know of any inconsistency.

15

defendant's ineffective counsel claim, even though it had two years earlier overruled the decision that was the basis for defendant's ineffectiveness claim; thus, the omitted objection that was the basis of counsel's alleged ineffectiveness would have been overruled under current law.12 Fretwell v. Lockhart , 946 F.2d 571 (8th Cir. 1991), rev'd, 506 U.S. 364 (1993). The majority reasoned that defendant was entitled to the circuit's case law that was in effect at the time of his sentencing because, if counsel had made the objection at issue at that time, the trial court would have had to sustain it and the outcome of the proceeding would have been different. Id. at 577. The Supreme Court reversed this decision, stating that the prejudice component of the Strickland test focuses not just on whether the outcome of a proceeding would have been different but for counsel's ineffectiveness, but on "whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." Fretwell, 506 U.S. at 372. "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." Id. The Court concluded that, despite the fact that defendant was not reaping the benefit of the law in effect at the time of his sentencing, since current case law held that a defendant was not entitled to the particular objection at issue, defendant had not been denied any substantive or procedural right to which the law entitles him and "[t]he result of the sentencing proceeding in the present case was neither unfair nor unreliable." Id. at 371. In so honing and clarifying the prejudice test, the

_____

12. Defendant argued that his counsel should have made an objection based on Collins v. Lockhart, 754 F.2d 258 (8th Cir. 1985) (holding that a death sentence is unconstitutional if it is based on an aggravating factor that duplicates an element of the underlying felony). The Eighth Circuit overruled Collins in light of the Supreme Court's decision in Lowenfield v. Phelps, 484 U.S. 231 (1988) (holding that a death sentence was not invalid on the ground that the sole aggravating circumstance found by the jury was identical to an element of the capital crime of which defendant was convicted). See Perry v. Lockhart, 871 F.2d 1384 (8th Cir. 1989) (overruling Collins in light of Lowenfield).

court harkened back to similar reasoning in Nix v. Whiteside, 475 U.S. 157 (1986).[13]

While in both Nix v. Whiteside and Lockhart v. Fretwell the application of concepts of reliability and fairness caused the court to conclude that a defendant was not prejudiced even though the outcome would have been different absent counsel's alleged ineffectiveness, we find the reasoning of these opinions to be helpful nonetheless here, where in the process of examining the probable effect of counsel's error, the District Court did not consider whether the proceeding reached an unreliable, unfair result. See Fretwell, 946 F.2d at 579 (dissenting opinion).

Our analysis of this aspect of the second prong of Strickland is not unlike our ruling in Kauffman, 109 F.3d 186, in which we held that defense counsel was ineffective for failing to investigate an insanity defense for a defendant when counsel had received a letter from a doctor supporting such a defense. Counsel claimed that he did not pursue this defense, and instead encouraged his client to plead guilty, because he viewed the insanity defense as inconsistent with defendant's conduct that demonstrated that he knew and appreciated the criminal nature of his acts. The district court had found no ineffectiveness and no prejudice because it concluded that the outcome would probably have been the same -- Kauffman would have been found guilty -- with or without counsel's alleged ineffectiveness. On appeal, however, we noted that "the breadth of the evidence adduced at the evidentiary hearing

_____

13. In Nix v. Whiteside, the defendant argued that he received ineffective assistance of counsel because his counsel refused to aid him in presenting perjured testimony. Although it seems likely that such conduct on the part of counsel could have an effect on the trial's outcome, the Court held as a matter of law that "counsel's conduct complained of here cannot establish the prejudice required for relief under the second strand of the Strickland inquiry." Nix, 475 U.S. at 175. The Court reasoned that, under Strickland, the "benchmark" of an ineffective-assistance claim is the fairness and reliability of the adversary
proceeding, and that "[w]hether he was persuaded or compelled to desist from perjury, Whiteside has no valid claim that confidence in the result of his trial has been diminished by his desisting from the contemplated perjury." Id.

17

is sufficient to undermine our confidence that Zorbaugh would have advised his client to plead guilty rather than proceed to trial and that Kauffman would have accepted that advice." Id. at 191. Defendant was prejudiced by counsel's conduct because there was a reasonable probability "that the outcome of these proceedings would have been different had his counsel not failed in this duty to investigate the evidence obtainable from various health professionals." Id. In essence, we used our own skepticism regarding the reliability and fairness of the result to inform our determination as to the outcome.

While we do not wish to overstate the applicability of Nix and Fretwell to the instant situation -- since they are clearly distinguishable -- nevertheless, they act as a reminder that the concept of reliability and fairness should serve as a guide as we make the prejudice determination. In determining whether there is a reasonable probability that the outcome would have been different absent counsel's ineffectiveness, the district court should look at whether the outcome that did occur was reliable and fair in light of all the evidence before it. In Kauffman, that evidence demonstrated that the defendant may well have been totally psychotic and therefore not guilty; similarly, here, that evidence tended to show that Coss was innocent of the assault charge. The results reached in the trial were unreliable and the outcome, had counsel been effective, may well have been different. We think that it is helpful to consider the reliability and fairness of the result reached as an aid to reaching the appropriate conclusion as to the probable outcome had counsel's ineffectiveness not been a factor.

Thus, we believe that counsel's failure to subpoena these witnesses who would have all testified as to Coss' innocence as to the simple assault renders the District Court's view that the outcome of the trial would have been the same with or without these witnesses to be flawed. In light of the amount of exculpatory evidence that was in fact available, yet not presented to the jury, we believe that counsel's conduct made the result of Coss' trial fundamentally unfair and unreliable, and the outcome would have likely been different if the witnesses had been called. Thus, Coss has

18

met his burden under Strickland, and subsequent Supreme Court case law clarifying Strickland, to prove that he was prejudiced by his counsel's failure to subpoena the witnesses at issue.

VII. Relief

Having determined that Coss' conviction for assault is constitutionally defective, we must determine what habeas relief should be afforded to him. We would normally remand this issue for determination by the District Court, but due to our concern for the defendant's continued confinement based on an unconstitutional conviction -- assuming the assault conviction did in fact play a role in enhancing the sentence he now serves -- and because the issue is one that has not previously received specific attention in the courts, we will determine the relief we will provide, requiring that the writ be conditioned as we deem appropriate.

We must decide between the two apparent choices for relief: condition the writ on the state's granting Coss a retrial on the 1986 assault charge and, if the result of the retrial differs from the previous result, a subsequent resentencing on Coss' current conviction, removing from Coss' current sentence any enhancement based on the prior unconstitutional conviction; or, condition the writ on the state's resentencing of Coss for his current conviction without any enhancement due to the prior unconstitutional conviction.14 While a retrial is the usual relief granted in a habeas proceeding based on ineffective assistance of counsel in connection with a current conviction, the Supreme Court precedent has required only resentencing absent consideration of the prior, unconstitutional conviction as the proper relief in this situation. See Tucker, 404 U.S. 443. For the reasons stated herein, we conclude that the proper relief under these circumstances is the latter of these two options, resentencing absent consideration of the unconstitutional conviction.

_____

14. In his various habeas petitions, Coss has consistently sought a new trial and a new sentencing hearing.

The writ of habeas corpus is a civil remedy against
unconstitutional confinement. See Fay v. Noia, 372 U.S.
391, 423-24 (1963). It is not "a stage of the state criminal
proceedings" or "an appeal therefrom." Id. at 424. Thus, in
an important way, habeas proceedings are independent
from the criminal proceedings that have already occurred,
serving only to judge and to correct that which results in
unconstitutional confinement. In many cases, the issue of
unconstitutional confinement is unrelated to the question
of guilt or innocence. It may, as in the case at hand, relate
to a current sentence that has been enhanced by an
expired, yet unconstitutional conviction. A sentence which
is enhanced based on a prior unconstitutional conviction,
although appearing more attenuated from the actual wrong
than a person's incarceration following an unconstitutional
trial, is nonetheless unconstitutional confinement and must
be corrected. See Tucker, 404 U.S. at 449.

We are guided by the Supreme Court decision in Tucker
in which, as here, the Court granted habeas relief based on
a prior conviction that had been served in full, but that had
an enhancement effect on the petitioner's current sentence.
The Court found the petitioner's current confinement
unconstitutional because it was based, in part, on a prior
conviction resulting from a trial at which he was denied his
constitutional right to counsel. Without any consideration
of the petitioner's probable guilt or innocence as to the
prior offense, the Court ordered the writ conditioned upon
petitioner's resentencing absent any consideration of the
prior, unconstitutional conviction. Since the prior
conviction was found unconstitutional, it could have no
impact on the petitioner's current sentence. See id. at 447-
48 (stating that the real question is not whether the
outcome of the earlier prosecutions would have been
different if Tucker had counsel, "but whether the sentence
. . . might have been different if the sentencing judge had
known that at least two of [Tucker's] previous convictions
had been unconstitutionally obtained").

In Maleng v. Cook, the Court was faced with the issue of
whether the petitioner was "in custody" in order to confer
habeas jurisdiction such that the petitioner could challenge
his sentence, enhanced by an allegedly unconstitutional,

20

expired conviction. The Court limited itself to the narrow issue of custody, but expressly recognized the possibility of challenging an expired conviction in connection with an attack on a current sentence enhanced by the prior conviction. In this case, however, unlike Tucker, the prior conviction was challenged based on the court's failure to hold a competency hearing.

We have since applied the reasoning in Tucker and Maleng, holding in Clark v. Commonwealth, 892 F.2d 1142 (3d Cir. 1989), that habeas relief was available to a petitioner whose current sentence was based in part on prior convictions tainted by the denial of his constitutional right to due process. Consistent with the relief granted in Tucker, we granted the petitioner's writ conditioned on resentencing for the subsequent offense absent consideration of the prior conviction. Id. at 1149 n.10 (stating that the only relief available under Tucker is resentencing). In Young v. Vaughn, we again applied the reasoning of Tucker, holding that the petitioner could challenge his prior conviction, held unconstitutional due to ineffective assistance of counsel, if this conviction was used to enhance his current sentence.15 Since in Young we were addressing only our jurisdiction to hear the habeas petition, we did not specifically consider what relief was appropriate if the petition was successful.

We see no meaningful distinction between Tucker and its

_____

15. Other courts have also recognized this type of collateral consequences relief and have held, consistent with our decisions in Clark and Young, that complete denial of right to counsel, as in Tucker, is not the only constitutional violation justifying such relief. See, e.g., Brock v.
Weston, 31 F.3d 887 (9th Cir. 1994) (prior conviction challenged based on involuntary and uninformed plea); Tredway v. Farley, 35 F.3d 288 (7th Cir. 1994) (prior conviction challenged based on involuntary guilty plea); Allen v. Collins, 924 F.2d 88 (5th Cir. 1991) (prior conviction challenged based on ineffective assistance of counsel); Battle v. Thomas, 923 F.2d 165 (11th Cir. 1991) (prior conviction challenged based on ineffective assistance of counsel); Gamble v. Parsons, 898 F.2d 117 (10th Cir. 1990) (prior conviction challenged based on involuntary and uninformed guilty pleas); Taylor v. Armontrout, 877 F.2d 726 (8th Cir. 1989) (prior conviction challenged based on involuntary guilty plea and ineffective assistance of counsel on appeal).

progeny and the case at hand to cause the relief in this case to be any different from that granted in Tucker. Both unconstitutional convictions, although expired, provided grounds for habeas relief because they resulted in the petitioners' serving sentences enhanced thereby, and were, thus, unconstitutional. Just as in Tucker, we cannot now correct by retrial the unconstitutional incarceration resulting from the previous conviction, as that sentence has been served in its entirety. Instead, all that we can do is provide the state court with the opportunity to void Coss' current sentence of the ramifications, if any, resulting from the prior unconstitutional conviction.

Conditioning the writ on resentencing is consistent with the mandate in Barry v. Brower, 864 F.2d 294, 301 (3d Cir. 1988). In Barry, we warned that "[a] habeas court does not have power to directly intervene in the process of the tribunal which has incorrectly subjected the petitioner to the custody of the respondent official. . . . The respect due the tribunals of a sovereign state within our federal system, however, requires that its courts be given an opportunity to correct their own errors." In this case, we will give the tribunal which incorrectly subjected him to custody-- namely, the sentencing court -- the opportunity to correct its error by resentencing Coss, ridding his sentence of the unconstitutional taint of his prior conviction.

We realize that the sentencing court must now assess the extent to which the unconstitutional conviction impacted the sentence it handed down and resentence without including the prior offense in its thinking. While this may leave an open issue as to Coss' guilt or innocence of the assault, guilt or innocence is not our charge.16 See Herrera v. Collins, 506 U.S. 390, 400 (1993) (stating that "federal

_____

16. It might even be said that our determination here is more probative of Coss' actual guilt or innocence of the assault charge than was the determination in Tucker. Here, we determine not only that counsel was ineffective, but, in determining prejudice, we held that there was a reasonable probability that the outcome of Coss' trial would have been different such that Coss may well have been found not guilty. No such finding was required with the invalid conviction in Tucker, where we know little as to his actual commission or guilt of the offense, but prohibited its consideration because of its blatant unconstitutionality.

22

habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution -- not to correct errors of fact"); Tucker, 404 U.S. at 447-48 ("We need not speculate about whether the outcome of the respondent's . . . prosecutions would necessarily have been different if he had had the help of a lawyer."); S. Rep. No. 80-1526, at 2 (1948) ("[H]abeas corpus . . . is not a determination of guilt or innocence of the charge upon which petitioner was sentenced. Where a prisoner sustains his right to discharge in habeas corpus, it is usually because some right .. . has been denied which reflects no determination of his guilt or innocence but affects solely the fairness of his earlier criminal trial.").17 Habeas relief serves to rectify conditions of unconstitutional confinement. Coss is no longer confined for the previous assault conviction. Thus, we are to rid Coss' current confinement of its constitutional defect -- which the reliance upon his previous conviction represents. Doing any more than this oversteps the bounds of our task on habeas review.18

Further, while re-trying Coss' assault would make resentencing fully informed, we think this inappropriate given our limited role in applying habeas relief, as a retrial would have the untoward result of providing Coss with a method of attacking, and altering, the outcome of his assault trial in a way otherwise unavailable to him through direct and collateral review absent this second conviction.19

_____

17. In fact, the actual innocence inquiry most often comes into play in habeas proceedings where a petitioner seeking relief on a potentially meritorious constitutional claim faces an otherwise dispositive procedural bar to review or relief. In these cases, the petitioner must proffer a colorable claim of innocence to defeat the bar. See Herrera v. Collins, 506 U.S. 390, 404 (1993).

18. We have explained previously that federal courts walk a fine line in fashioning the appropriate relief on habeas review. See Henderson v. Frank, 155 F.3d 159, 168 (3d Cir. 1998) (explaining that the condition upon which the writ is issued must be fitted between two principles: minimizing intervention into the state criminal process and ensuring the cure of all constitutional defects).

19. Actually, Coss did present his ineffective assistance of counsel claim in a collateral challenge to his 1986 convictionfiled pursuant to Pennsylvania's Post Conviction Hearing Act. This petition, which served

It is one thing to enable a petitioner to attack the constitutionality of a prior conviction insofar as it impacts a later sentence; it is quite another to let him reach back and undo that conviction after the opportunity for challenging it on direct appeal and collateral proceedings has come and gone. The concept of challenging previous convictions as enhancers is a novel use of habeas; we should not let it bring about untoward results. See Alan C. Smith, Note, More Than a Question of Forum: The Use of Unconstitutional Convictions to Enhance Sentences Following Custis v. United States, 47 Stan. L. Rev. 1323, 1340 (1995) (stating that "the language in Maleng indicates the Court's reluctance to let defendants challenge prior convictions in the federal habeas forum" and that the "reasoning in Custis regarding the importance of finality and the difficulty of administering attacks on prior convictions also reveal[s] a desire to severely limit these claims").

Our view that resentencing on the more recent conviction is warranted, rather than a new trial on his 1986 assault charge, is also consistent with language in other case law discussing this unique habeas posture. While Tucker appears to be our sole guide as to the conditional relief appropriate in these circumstances, the developing jurisprudence focusing on these unique circumstances is consistent in noting that we are not attacking the expired conviction directly. Instead, the prior conviction may only be attacked in the "context of " the current sentence. Young, 83 F.3d at 78 (specifying that a defendant may only attack a prior conviction "in the context of a challenge to the

_____

as justification for the District Court to excuse the exhaustion requirement, has yet to be acted upon by the state courts. While Coss' petition remains pending, in all likelihood the state courts would refuse to entertain it at this late date. See, e.g., Ahlborn, 699 A.2d at 720 (stating that collateral relief is not available for a petitioner who is not currently serving a sentence of imprisonment for the conviction he wishes to challenge, even if collateral consequences stem from that conviction). Nonetheless, our resolution of Coss' habeas claim, and part of our rationale for declining to find that a new trial would be the appropriate relief here, stems from the fact that doing so would make this type of challenge available even if Coss had not raised this issue in connection with the review of his 1986 conviction.

24

enhanced sentence for which he is in custody"); Gamble, 898 F.2d at 118 (interpreting Maleng as precluding a defendant from challenging an expired conviction "directly," but stating that a defendant may attack a prior unconstitutional conviction in the context of its effect on a present sentence); Taylor, 877 F.2d at 727 (same); see also Crank v. Duckworth, 905 F.2d 1090, 1091 (7th Cir. 1990) ("That a person happens to be in custody is of course not a sufficient reason to rummage through old judgments in search of ones that may be invalid. To obtain relief under S 2254 the prisoner must show that his current confinement violates the Constitution.").[20] It is in the context of his current sentence that Coss has attacked the previous conviction, and it is in that context, and limited to that context, that we will require habeas relief to be afforded to him.

Accordingly, we order that a writ shall issue conditioned upon Coss' being resentenced without consideration of the previous assault conviction.

VIII. Conclusion

For the reasons stated above, we will reverse the District Court's denial of Coss' habeas petition and remand to the District Court with instructions that it order a writ of habeas corpus to issue conditioned upon Coss' being resentenced without consideration of the previous assault conviction.

_____

20. We do not read Brock v. Weston, which did not expressly limit the condition of the writ on the petitioner's resentencing, but rather ordered the district court "to resolve the petitioner's challenge to [the prior] conviction," as inconsistent with our holding here. Instead, we interpret Brock as an order to rid the petitioner's current sentence of any ramifications from his prior unconstitutional conviction, not as an order to retry the petitioner on the expired conviction.

25

ALDISERT, Circuit Judge, concurring in part and dissenting in part.

Several important public policy and social welfare considerations divide the panel in this case, the facts of which, at first blush, seem very pedestrian, yet the grant of habeas corpus relief presents an extremely important question that goes to the heart of comity in the relationship of federal courts and state sovereignties in habeas corpus cases brought under 28 U.S.C. S 2254. In granting the writ, the majority denies the Commonwealth of Pennsylvania the option of correcting the constitutional infirmity of incompetency of counsel by means of new trial. I disagree with this result.

I adhere to the long line of cases in this court that typically condition the grant of the writ under S 2254 on allowing the state the option, where it is possible, to cure the constitutional infirmity. My experience in this court's tradition goes back 31 years when I wrote the court's opinion in United States ex rel. Crosby v. Brierley, 404 F.2d 790 (3d Cir. 1968), a Pennsylvania murder case in which we determined that the guilty plea was constitutionally infirm.[1]

The precise issue that occupies our attention was not raised by the parties, but rather was injected by the majority without briefing or argument. Indeed, Coss did not even request the relief he is now receiving. In his Second Amended Habeas Corpus Petition, drafted by counsel, Coss simply sought a new trial of his 1986 conviction. See Joint App. at 19 P 4 ("The above stated issues are meritorious and demonstrate that Coss was denied his due process right to a fair sentencing hearing and his Sixth (6th) Amendment right to effective assistance of counsel. Thus,

_____

1. Therein we stated:

> Accordingly, we will vacate the order of the court below and remand the case with the direction that the district court issue a writ of habeas corpus without prejudice to the right of the Commonwealth of Pennsylvania to undertake appropriate action in the further prosecution of this matter.

404 F.2d at 802.

26

Coss is entitled to a new trial and sentencing hearing with regard to his institutional vandalism, criminal mischief, and simple assault convictions.").

I.

This melancholy chronicle of events started with a simple assault and battery that took place on June 25, 1986, in the small city of Dickson in Lackawanna County, Pennsylvania, when the local police were called to a high school graduation party at the home of Carol Ann Frank, the sister of the then-17 year old Appellant, Edward Coss. It seems that Carol Ann's roommate, one Lisa Frieto, got into a hair pulling contest with another party goer, one Sherry Kulick, and thereafter the revelers, all of whom were juiced up, apparently picked sides and a grand donnybrook was had by all until Carol Ann, the hostess, a real party-pooper, threw everyone out of her house.

Undeterred by the great outdoors, the donnybrookers continued their carousing outside until the landlord and the neighbors called the police. When the cops arrived with their usual greeting, "Break it up," there apparently was a slight problem in attitude adjustment, and the cops say that Coss threw a couple of punches at one of them, which landed Coss in the local lockup. Totally dissatisfied with the accommodations, Coss proceeded to voice his complaint by destroying a radiator, a sink, a toilet and a lightfixture on the ceiling in his cell. For this, he was convicted of simple assault and institutional vandalism and sentenced to six months to a year on each offense. Coss did his time and was released to society on parole.

Seven or eight months after Coss was discharged from Pennsylvania parole supervision on August 30, 1989, a certain Peter Petrovich was beaten "by a group offive or six men, including appellant,"[2] and Coss was arrested and convicted on one count of aggravated assault and battery and one count of simple assault for his part in the group effort to register displeasure on Petrovich's person. Coss was sentenced to a term of six to twelve years

_____

2. See Commonwealth v. Coss, 695 A.2d 831, 833 (Pa. Super. Ct. 1997).

27

imprisonment on the aggravated assault conviction and there is no question that the sentencing judge took into consideration his previous conviction of assault and battery.

II.

The panel is in agreement that a Sixth Amendment deprivation of competent counsel infected the trial for the 1986 offense. We have federal habeas corpus subject matter jurisdiction to reach this conclusion under 28 U.S.C. S 2254, even though Coss is no longer "in custody" for that offense--no longer imprisoned or on parole-- because of the teachings of Maleng v. Cook, 490 U.S. 488 (1989) (per curiam), Clark v. Commonwealth, 892 F.2d 1142 (3d Cir. 1989), and Young v. Vaughn, 83 F.3d 72 (3d Cir. 1996).

The majority's approach requires us to assess the rights of society as against the rights of the criminal following a determination that the criminal is in custody for a sentence that has been tainted by a constitutionally infirm conviction, for which the criminal is no longer in custody. The normal relief that we grant in habeas corpus is to order that the habeas petitioner be freed, subject to the right of society to correct in a timely manner the constitutional error through a new state proceeding. It cannot be controverted that had Coss filed his habeas petition during the period he was incarcerated or on parole from thefirst conviction and we decided that he had been deprived of his Sixth Amendment right to counsel, we would have accorded Pennsylvania the option of releasing him or correcting the infirmity by means of a new trial or other proceedings. See, e.g., Henderson v. Frank, 155 F.3d 159 (3d Cir. 1998); Barry v. Brower, 864 F.2d 294 (3d Cir. 1988).

Here, however, we cannot "free" Coss because he has already, in the vernacular, "done the crime and done the time." We are thus faced with the very nice question: Should we give society, here, the Commonwealth of Pennsylvania, the right to cure the Sixth Amendment constitutional defect or should we give the Appellant a free ride and have his second sentence declared invalid simply because he is a recidivist?

28

I think that the state body politic should always have the right to cure the constitutional defect of a conviction used to enhance a sentence on a later conviction (1) if the federal court has the jurisdiction to confer that option upon the state and (2) if it is at all possible by means of new state proceedings. The cases relied upon by the majority to support its grant of extraordinary relief are exceptions to this well-reasoned rule based on the inability of the federal courts to direct new state court proceedings. The circumstances present here fall squarely within our traditional procedures. To follow the course set by the majority, therefore, improperly infringes on state sovereignty and on the notions of federalism, comity and fairness that underlie the habeas corpus framework.

In Henderson, supra, we explained that "federal habeas power is limited, first, to a determination of whether there has been an improper detention by virtue of the state court judgment; and second, if we find such an illegal detention, to ordering the immediate release of the prisoner, conditioned on the state's opportunity to correct constitutional errors that we conclude occurred in the initial proceedings." 155 F.3d at 168.

It must be asked why, in light of our clear discussion in Henderson, the majority seeks to deprive the Commonwealth of the option of correcting the constitutional violation by a new trial on simple assault. The majority's primary answer is a reliance on United States v. Tucker, 404 U.S. 443 (1972). Let's examine that case.

A.

The teachings of Tucker do not constitute an appropriate analogue to this case or any other federal habeas case brought under S 2254. United States v. Tucker by caption and by content was not a habeas corpus case brought under S 2254 based on a state conviction; the defendant there was seeking post conviction relief from a federal conviction pursuant to 28 U.S.C. S 2255. This is a distinction with a fundamental difference. The Court could not possibly condition relief on affording any state the

29

opportunity to retry the defendant because no state officials were parties to the law suit. No state warden, no custodian, no state officers were respondents or defendants as in the case of a S 2254 petition. In bringing his action, Tucker was attacking a federal sentence imposed by the District Court for the Northern District of California that had been enhanced on the basis of invalid state court convictions from Florida and Louisiana. Because the Court had no state officers as petitioners or respondents before it, the Court lacked power or authority to give the option to a state court in Florida or Louisiana to retry the defendant. To prevent the "erosion of the Gideon principle" that the right to effective assistance of counsel is fundamental, the Court had no alternative other than to order that the defendant be resentenced on the federal conviction without reference to the invalid state court convictions.3  In contrast, in every habeas petition brought under S2254, an officer of the state or a political subdivision thereof is always the respondent.

The teachings of Tucker reflect one exception to the general rule of permitting the state to correct the constitutional infirmity in a subsequent sentence enhancement case--where the federal court lacks the authority to afford the state the opportunity to correct the constitutional infirmity because no state officer is a party to the litigation. We now turn to another exception reflected in the cases.

B.

This court has held, and properly so, that where it is factually impossible for the constitutional infirmity to be cured by additional state proceedings, the federal court in

_____

3. The Court's discussion is specifically targeted to a S 2255 case:

> [T]he real question here is not whether the results of the Florida and
> Louisiana proceedings might have been different if the respondent
> had counsel, but whether the sentence in the 1953 federal case
> might have been different if the sentencing judge had known that at
> least two of the respondent's previous convictions had been
> unconstitutionally obtained.

404 U.S. at 448 (emphasis added).

a S 2254 case may simply order resentencing on the subsequent conviction without considering a previous constitutionally infirm conviction. See Clark v. Commonwealth, 892 F.2d 1142 (3d Cir. 1989). Clark was a deprivation of due process case lodged against a prior conviction that served to enhance the sentence for a subsequent offense. The gravamen of the petitioner's complaint was that in 1974, when Clark was 17 years of age, he was denied a juvenile court hearing to determine whether he should have been tried as a juvenile or as an adult. At the time we heard this appeal in 1989, the petitioner was 31 years old. Accordingly, we could not give the Commonwealth the option of providing Clark a juvenile court hearing. The only relief possible was to order a resentencing on the subsequent conviction without enhancement. Thus, Clark reflects at least a second exception to the general rule permitting the state to exercise the option of additional proceedings, to-wit, where it is factually impossible for the state to cure the constitutional defect.

III.

We must then determine what dictates of public policy or social welfare, or what directive force of law--philosophy, history or custom--exists to deny the Commonwealth of Pennsylvania this same option merely because Coss committed another crime and was incarcerated again. To be sure, we have concentrated our federal habeas corpus jurisprudence on the rights of the criminal, but this does not mean that federal judges are at liberty to ignore or totally disregard the rights of society. The great Cardozo taught us:

> The final cause of law is the welfare of society. The rule that misses its aim cannot permanently justify its existence. "Ethical considerations can no more be excluded from the administration of justice which is the end and purpose of all civil laws than one can exclude the vital air from his room and live.". .. [W]hen [judges] are called upon to say how far existing rules are to be extended or restricted, they must let the

31

> welfare of society fix the path, its direction and its
> distance.4

Drawing the line between individual liberties and rights,
and society's rights reflected by government action for the
larger good, is still the perpetual question of constitutional
law and is the precise issue that faces this panel today.
Two thousand years before the Constitution was ratified,
the same problem bothered an ancient social order that
spoke through Heraclitus: "The major problem of human
society is to combine that degree of liberty without which
law is tyranny, with that degree of law without which
liberty becomes license."5

Were we simply deciding a case that involved one young
man who had difficulty in the past controlling his urge to
punch people and tear out fixtures in a jail cell, and were
we to be limited to the facts of this case where, more
probably than not, the District Attorney of Lackawanna
County likely will not be inclined to commit the resources
of his office to retry a simple assault and battery case that
occurred thirteen years ago, I do not think that this case
would be important at all.

But we must realize that the holding of this case will
have a profound effect that far transcends the mundane
facts before us here and the question of whether we have
jurisdiction to consider Coss' appeal in the first place; and
that is the whisper of Immanuel Kant behind the ear of
every appellate judge reminding us of his famed categorical
imperative: "Act as if the maxim of your action were to
become through your will a universal law of nature."6 Two
centuries later, an elaboration on the basic theme was
uttered: "Judges must decide all the issues in a case on the
basis of general principles that have legal relevance; the
principles must be ones the judges would be willing to

_____

4. Benjamin N. Cardozo, The Nature of the Judicial Process 66–67 (1921)
(footnote omitted).

5. See Ruggero J. Aldisert, The Judicial Process: Text, Materials and
Cases 9 (2d ed. 1996).

6. I. Kant, Groundwork of the Metaphysics of Morals 89 (Paton trans.
1964) (1785).

apply to the other situations that they reach; and the opinion justifying the decision should contain a full statement of those principles."7 This is the concept that undergirds the common law doctrine of precedent: The legal rule announced in a reported case of an appellate court will be applied in subsequent cases presenting the identical facts or materially similar ones.

The majority's holding today is not designed to meet the fugitive exigencies of the hour. Rather, this court is issuing a reward to every recidivist criminal. If you come to federal court during your actual first custody, you will not automatically be set free; the state will be given an opportunity to correct the constitutional infirmity, usually by means of a new trial, some new proceeding or new appeal. But if you wait to file a habeas challenge of the previous conviction until after you commit another criminal act and are sent to jail, the possibilities are so much more palatable, for if you are successful, the body politic does not have the right to correct the original infirmity; automatically, you get the benefit of a resentencing on the second case as if the constitutional infirmity was metaphysically impossible for the state to correct. When you wait until the second offense, Mr. Recidivist Criminal, and the habeas court finds an infirmity in thatfirst conviction, you can thumb your nose to society,"Heads I win, tails you lose." Or in the lingo of the jailhouse lawyers, "Pal, you're gonna get a free pass."

If we are to weigh the various claims, wants and demands asserted on the one hand by the misdemeanant or recidivist and on the other hand by society, the law requires adjustments or compromises of conflicting interests. To do this, we turn to some social interest, frequently under the name of public policy, to determine the limits of reasonable adjustment. We have been taught that a primary social interest is in the general security, long recognized in the maxim that the safety of the people is the highest law. An equally primary social interest is in the life

_____

7. K. Greenawalt, The Enduring Significance of Neutral Principles, 78 Colum. L. Rev. 982, 990 (1978), commenting on  H. Wechsler, Toward Neutral Principles of Constitutional Law, 73 Harv. L. Rev. 1 (1959).

and freedom of the individual. They are on a collision course here, as Heraclitus explained a millennium or two ago, but I feel that if we look at law functionally as an attempt to satisfy, to reconcile, to harmonize,"to adjust these overlapping and often conflicting claims and demands,"8 the balance must be struck here in favor of the Commonwealth, which should be given the opportunity to correct the constitutional infirmity that we have found here.

It is for the foregoing reasons that I dissent in part and would grant the writ of habeas corpus conditioned on the right of the Commonwealth of Pennsylvania to correct the constitutional infirmity by retrying Coss on the 1986 incident.

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit

_____

8. Roscoe Pound, A Survey of Social Interests, 57 Harv. L. Rev. 1, 39 (1943).